| | | |
|---|---|---|
| JACQUELINE CONWAY | * | IN THE |
| Plaintiff | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| JASMINE JEFFRY, ET AL. | * | OF MARYLAND |
| Defendant | * | *Northern District* |
| | * | Case:  1:25-cv-01826-MJM |

**************************************************************************

### OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

**NOW COMES**, Plaintiff, Jacqueline Conway, by and through her attorney, J. Wyndal Gordon of **THE LAW OFFICE OF J. WYNDAL GORDON, P.A.**, and Raouf M. Abdullah of **RAOUF M. ABDULLAH & ASSOCIATES, LLC** to submit this Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and Cross-Motion for Summary Judgment pursuant to Rule 12(b)(6), 12(d), and Rule 56 alleging as true the following:

**NOTE WELL:**  Plaintiff's Complaint and Demand for Jury Trial is consistent with, and virtually mirrors, the Statement of Facts set forth below. (Ex. 15).  Because Defendants have styled their motion as one to dismiss --or, in the alternative, for summary judgment --and have submitted materials outside the pleadings, Plaintiff has treated the motion as one for summary judgment under Rule 56, in an abundance of caution.  Pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The court may properly consider matters outside the pleadings under these circumstances. *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625–26 (D. Md. 2020). Moreover, when a movant expressly captions its motion "in the alternative" as one for summary judgment and submits exhibits or other materials for the court's review, the parties are deemed to have sufficient notice of potential conversion under Rule 12(d)." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

*    *    *

### I.    STATEMENT OF FACTS

On October 29, 2024, @ 2:03p, Baltimore City Sheriff's Department, retired Captain, Jacqueline Conway, 60, 5'3, was on her part time job delivering food for Door Dash when she

1

happened upon a customer, Keyon Agnew, 21, 6'3, who deliberately answered the door of his residence/rowhome otherwise known as 1733 Edgewood Road, Loch Raven, Baltimore County, Maryland 21286 --with his genitals exposed and penis erect. (Pl. Ex. 1 ¶¶6 - 7), *see also* (Pl. Ex. 3 pp. 2 - 3), (Pl. Ex. 7), (Pl. Ex. 14). The customer looked Conway in the eyes, with one of his forearms leaning above his head against the door frame and the other bent downward with its hand on his hip; the customer was simultaneously smiling at Plaintiff while looking down at his stimulated genital, then back up again at Plaintiff with his eyebrows raised and a tilted grin. (Ex. 1 ¶8), *see also* (Df. Jeffry BWC-A, 05:12 - 28) ("All you saw was his penis and balls, . . . I would not waste your time or mine . . . I want to file charges because he came to that door with his penis hanging out.").

Plaintiff, shocked, offended, and frightened by the customer's lewd/indecent exposure, exchanged some words, and immediately returned to her vehicle to call the police –multiple times. (Pl. Ex. 1 ¶9). She moved her car across the street diagonally from the customers home to create distance and await police. Id., *see also* (Df. Jeffry BWC-A. 02:20 - 02:30), (Pl. Ex 4 p. 2). Moments later, the customer came outside demonstrably aggressive and violent. (Pl. Ex. 1 ¶10). He was flailing his arms with clenched fists, --yelling profanities and threatening to cause serious bodily harm to Plaintiff. Id. Fearing for her life and suddenly realizing she was vulnerable to attack seated inside her vehicle, Plaintiff retrieved and unholstered her lawfully owned and legally permitted firearm. (Pl. Ex. 1 ¶11). She held it in the low ready position, pointed downward toward the passenger-side floorboard to safely avoid a physical confrontation and protect herself if necessary. Id. She then commanded the customer to "back up" from her truck. (Pl. Ex. 1 ¶12). He complied and returned to his home, at which point Plaintiff safely put

her firearm away.  Id., *see also* (Ex. 4 pp. 3 - 4).  Plaintiff did not raise the firearm nor did the customer see her firearm.  Plaintiff then safely drove to the next street over --off the customer's block --to a safer location while continuing to call 911. Id., *see also* (Pl. Ex. 4 pp. 2 - 3), (Df. Jeffry BWC-D, 13:48 - 55).  Plaintiff was determined to press criminal charges against the customer for lewdness, indecent exposure and solicitation, and possibly assault.  Id., (Pl. Ex. 4 p. 2) *see also* CL §11-107(b) ("A person may not commit the common law crime of indecent exposure."), *see also* CL § 11-306(a) ("A person may not knowingly procure or solicit or offer to procure or solicit prostitution or assignation.").  Altogether, Plaintiff contacted 911 two-three times.  (Pl. Ex. 1 ¶13).  When no one was dispatched, Plaintiff decided to drive to the Towson police precinct to press charges.  Id., (Df. Jeffry BWC-D, 13:48 - 55).  While en route, Plaintiff encountered Defendant Baltimore County PO Jasmine Jeffry in the parking lot of a local Walgreens Drug Store.  *See* (Pl. Ex. 1 ¶13), (Df. Jeffry BWC-B, 05:15 - 5:30).  Plaintiff advised PO Jeffry what happened, PO Jeffry confirmed Plaintiff's 911 calls, and they both returned to the scene together.  Id.  An investigation ensued, lead by PO Jeffry and her sergeant, Defendant Bryan McDowell #5819.  (Pl. Ex. 1 ¶14).  When Sgt. McDowell arrived, he parked his police vehicle behind Plaintiff's SUV, boxing her in between the car parked in front of it.  Id. Meanwhile other officers took positions around Plaintiff's vehicle effectively detaining her in her front passenger compartment.  Id.  The entire time, Plaintiff was not free to leave.  Id.  PO Jeffry, McDowell, *et al.*, maintained their physical presence around Plaintiff's vehicle until commanding her to alight therefrom to be officially arrested, handcuffed, and taken into custody. (Pl. Ex. 1  ¶15).  PO Jeffry and Sgt. McDowell equally participated in gathering and verifying information from the customer and Plaintiff, including (1) information concerning Plaintiff's

3

reasonable apprehension of fear caused by the customer's aggressive behavior toward her, (2) Plaintiff's retired status, (3) her law enforcement credentials, and (4) the fact that the customer never saw Plaintiff in possession of a firearm. (Pl. Ex. 1 ¶16). Upon the conclusion of Defendants PO Jeffry and Sgt. McDowell investigation, they advised Plaintiff that she was being charged with 1st Degree Assault. (Pl. Ex. 1 ¶18). When PO Jeffry and/or Sgt. McDowell pulled out their handcuffs Plaintiff feared she would be arrested and thereby assaulted without probable cause or legal justification; she also feared that handcuffs would be applied to her wrists in public and she would be taken into police custody --without consent. Id. Plaintiff was ultimately charged by Defendant(s) with 1st and 2nd degree assault and faced 35 years imprisonment and a $2500 fine. Id., *see also* (Pl. Ex. 2 p. 1). None of Plaintiff's conduct alleged occurred in the presence of the officers to justify an arrest for any variety of second degree assault. No physical contact with the customer occurred, Plaintiff did not point her firearm at anyone, nor did she place the customer in reasonable apprehension of fear *"with a firearm*." *See* CL §3-202. The customer "never observed a firearm." *See* (Pl. Ex. 1 ¶17), (Pl. Ex. 4 p. 3). The firearm remained in a low ready position pointed downward toward the passenger-side floorboard at all times. Consequently, there was no justification for Plaintiff's arrest for 1st Degree Assault. According to PO Jeffry, the customer claimed he observed an object that resembled a "Taser" –not a gun. (Pl. Ex. 1 ¶17). The customer was "adamant" about <u>not</u> observing a firearm, explaining that he "knows what a Taser looks like" and the "only [weapon he] noticed" was a Taser in [Plaintiff's] "left hand." Id., (Pl. Ex. 4 p. 3), *see also* (Df. Jeffry BWC-B. 01:50 - 02:03). The customer doubled-down on this response, by "repeatedly" stating he "[n]ever observed a *firearm* in [Plaintiff's] hand" or "point[] a gun in his direction." (Pl. Ex. 4 p. 3).

Equally important, Sgt. McDowell had corroborating evidence that Plaintiff unholstered her firearm and placed it in the "low ready" position pointed toward the passenger-side floorboard of her vehicle for safety and self-defense.  *See* (Pl. Ex. 1 ¶20), (Pl. Ex. 4 p. 3), *see also* (Df. Jeffry BWC-D. 13:20 - 13:27).  Plaintiff grew fearful of the customer "walking toward" and "up to" her vehicle demonstrably aggressive, [in a] violent manner with his arms flailing and fists balled up, yelling profanities, anf appearing physically menacing and threatening to cause [Plaintiff] serious bodily injury.  *See* (Pl. Ex. 1 ¶¶10, 21), *see also* (Pl. Ex. 4 p. 3) ("Agnew reported that he *yelled* at Suspect Conway and questioned why she was still sitting in front of his residence."), *see generally* (Df. Jeffry BWC-D. 13:20 - 13:27).  Plaintiff responded in a way consistent with her training and out of genuine fear.  (Pl. Ex. 1 ¶21).  Nonetheless, the inference drawn from the customer's interaction with Plaintiff was that he had gotten so close to Plaintiff that he could see an object in her *left* hand inside of her vehicle.  He was positive it was not a firearm but confident it was a Taser.  (Pl. Ex. 1 ¶17), (Pl. Ex. 4 p. 3), (Df. Jeffry BWC B. 01:50 - 02:03).  The alternative inference is that the customer was being deceptive about whether he saw anything in Plaintiff's hand at all --neither a firearm nor a Taser.  Last, Defendants PO Jeffry and Sgt. McDowell did not believe Plaintiff was a flight risk as she was not resisting, she was polite and cooperative, she had no criminal record and she was a *bona fide* retired law enforcement officer with credentials, a verified address, verified driving privileges, a Concealed Carry Weapons permit, and current vehicle registration and ownership documentation.

As a direct and proximate cause of this incident, Plaintiff was severely humiliated, embarrassed, and traumatized by acts of PO Jeffry and Sgt. McDowell.  She was unlawfully handcuffed and taken into custody at the scene as ordered by Sgt. McDowell and complied with

all of PO Jeffry commands to facilitate the arrest. (Pl. Ex. 1 ¶22). While being transported, Plaintiff advised PO Jeffry that the handcuffs were too tight and caused pain and agony to her wrists and back due to recent career-ending back surgeries. Id., at ¶23. Plaintiff's vehicle and personal affects --including her purse were abandoned and her vehicle was left accessible to the miscreant customer who had just victimized her. Id., at ¶24. Plaintiff was transported to the Baltimore County Police Department and placed in a bull-pen where she was fitted in leg-irons and remained for several hours. Id., at ¶22.

Conway was released by a Court Commissioner who expressly found "*no probable cause*" for her arrest, charges, or detention. *See* (Pl. Ex. 3 pp. 1 - 2). At all times alleged, Defendants Sgt. McDowell and PO Jeffry knew Plaintiff had not committed any crimes, that she was a victim of a sex offense, that she 60 years old, 5'3, that the customer was 21 years old, 6'3, that Plaintiff was performing her duties as a "DoorDasher" delivering food, that she was approached in an aggressive manner by the customer (after victimizing Plaintiff by exposing himself while aroused) as she sat in her vehicle across the street before moving to a distant corner the next street over to await police to arrival. (Pl. Ex. 1 ¶¶30 - 32). Plaintiff's front passenger compartment is a confined space that permits minimal body movement thereby making Plaintiff vulnerable to an ambush attack. Id. Last, Defendants Sgt. McDowell and PO Jeffry knew that Plaintiff was retired law enforcement, trained in the proper use of a firearms, and use of force and self-defense techniques. Id., (Pl. Ex. 4 pp. 1 - 4). Notwithstanding these facts, Sgt. McDowell and PO Jeffry *unlawfully* arrested Plaintiff, 60, the victim of a sex crime, after she called them for their help. And they arrested her right in front of her offender who exposed himself, solicited her, and assaulted her (by fright) when he came outside to confronting her aggressively while she

6

was sitting inside of her vehicle. (Pl. Ex. 1 ¶¶30 - 32). Despite Plaintiff's insistence that Sgt.

McDowell and PO Jeffry *lawfully* arrest the customer pursuant to CP §2-203(b)(6) for violating

Plaintiff, they refused. Instead, they chose to further embarrass and humiliate Plaintiff by

arresting her in front of him. The entire experience left Plaintiff fearful and emotionally scarred.

(Pl. Ex. 1 ¶¶29 - 31). PO Jeffrey and Sgt. McDowell not only violated Conway's 4th and 14th

Amendment rights by unlawfully arresting and imprisoning her without probable cause, they also

unlawfully seized her firearm and never returned it, thereby violated Plaintiff's Second

Amendment rights. The next day, October 30, 2024, PO Jeffry sent Plaintiff a text message

expressing "concerns" about Plaintiff's wrongful arrest and imprisonment. *See* (Pl. Ex. 6). PO

Jeffry forwarded her police report and charges to the Baltimore County State's Attorney's Office

("SAO") for prosecution. After the case was reviewed by Assistant State's Attorney (ASA),

Samuel Dominick, III, the SAO declined to prosecute. According to PO Jeffry, ASA Dominick,

III, made the following representation (admissible as State of mind of declarant [belief, intent,

plan], expert testimony, and declaration against interest of PO Jeffry) as to why the SAO declined

to prosecute:

> "[B]ased on the articulable facts of the incident, which highly
> suggested the arrest of [Conway] was made prematurely and
> without a completed and thorough investigation of all possible
> facts . . ., all the charges/the criminal case . . . generated against
> [Conway] . . . would be dismissed, as he agreed there was no intent
> of malicious criminal action(s) on her part during this incident that
> could constitute or require criminal prosecution against her by the
> Baltimore County State's Attorney's Office." *See* (Pl. Ex. 5, BCPD
> Case Rep. J. Jeffry #6503, pp. 4-5).

On the 22nd day of November, 2024, which was Plaintiff's first trial date, the SAO

dismissed her charges, including the felony charge of 1st Degree Assault. (Pl. Ex. 12), (Pl. Ex. 1

¶27).  On November 26, 2024, the news media published a story about Plaintiff's arrest, and the very next day on November 27, 2024, the customer was charged with indecent exposure via criminal summons.  (Pl. 13), (Pl. Ex. 14).  The entire investigation was captured on PO Jeffry's and Sgt. McDowell's body worn cameras (BWC).  (Pl. Ex. 4 p. 4).  Defendants failed to produce the video from Plaintiff's initial contact with them at Walgreen's, PO Jeffry's travel to the scene, and the entire video of PO Jeffry discussing the case with an immediate supervisor.  Based upon the foregoing, Defendants have failed to show Plaintiff has failed to state a claim for which relief can be granted or that there are no genuine disputes of material facts so that judgment should be rendered as a matter of law.  This case is replete with plausible well-plead claims and genuine disputes of material facts –even without the complete review of the all of the videos.  Plaintiff believes she is entitled to Summary Judgment and so moves.

## II.    STANDARD OF REVIEW

Generally, when considering a motion to dismiss under Rule 12(b)(6), the Court is limited to evaluating the sufficiency of the allegations within the four corners of the complaint and any "documents attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) *quoting E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011). Courts do not ordinarily consider materials "outside of the complaint, or not expressly incorporated therein." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).  Here, Defendants do not argue that the Complaint fails to state a claim; rather, they contend that video evidence contradicts Plaintiff's allegations. Yet, as the Fourth Circuit has made clear, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery."  *Kolon*, 637 F.3d at 448.  Although Defendants'

body-worn camera (BWC) footage depicts portions of their investigative conduct, it does not capture Plaintiff's physical pain, emotional distress, or the full scope of the force inflicted during handcuffing and transportation. Plaintiff is therefore entitled to additional discovery, including sworn testimony and relevant records, to more fully develop the evidentiary record.

Plaintiff submits that the video actually shows her exhibiting a high pain tolerance and verbal restraint, and code-switching –survival conduct shaped by fear that any perceived resistance might provoke harsher treatment.  (Pl. Ex. ¶34).  Her goal was to get home safely.  As *Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272 (4th Cir. 2011) cautions, a court may not reject a plaintiff's version of events if the video "merely offers *some* support for a governmental officer's version." Id. at 276.  Likewise, where "the videos are unclear and ambiguous, the Court must adopt [the nonmovant's] version of events."  *Hall v. WMATA*, 33 F. Supp. 3d 630, 632 (D. Md. 2014).  Plaintiff respectfully requests that the Court not rely solely on Defendants' selected BWC clips to determine the nature and degree of force used, or the extent of her injuries and pain & suffering.  She further requests access to all BWC footage in full, and all other relevant discovery materials, including all of PO Jeffry's recorded phone conversations about the case while she was en route to the scene.  *See* (Df. Jeffry BWC-A, 00:00 - 1:00), (Df. Jeffry BWC-B, 04:28 - 7:34).

If the Court construes Defendants' motion as one for summary judgment, it must view the facts in the light most favorable to Plaintiff and draw all justifiable inferences in her favor. *Wheelabrator Baltimore, L.P. v. Mayor & City Council of Baltimore*, 449 F. Supp. 3d 549, 558–59 (D. Md. 2020) *citing Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59

(1970).  Summary judgment is appropriate only where the movant shows that "there is no genuine dispute as to any material fact" based on admissible evidence.  Fed. R. Civ. P. 56(a), (c)(1)(A).  Supporting materials must be presented in a form admissible at trial, and affidavits must be based on personal knowledge and set forth facts admissible in evidence. Fed. R. Civ. P. 56(c)(2) - (4).  Once properly supported, the burden shifts to the nonmovant to show that a genuine dispute exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  However, such disputes cannot rest on "mere speculation or the building of one inference upon another."  *Othentec Ltd. v. Phelan*, 526 F.3d 135, 141 (4th Cir. 2008) *quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  A fact is "material" if it might affect the outcome under governing law.  *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A dispute is "genuine" where the evidence is sufficient for a reasonable jury to return a verdict in the nonmovant's favor.  *Anderson*, 477 U.S. at 248.  Where a party fails to show sufficient evidence on an essential element for which they bear the burden, "there can be 'no genuine [dispute] as to any material fact.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Where both parties move for summary judgment, the Court must consider each motion separately and resolve all factual disputes in favor of the nonmovant.  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) *quoting Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997); *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).  The Court must also ensure that factually unsupported claims and defenses do not proceed to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).  If the evidence is merely colorable or not significantly probative, summary judgment should be granted.  *Anderson*, 477 U.S. at

249–50.  Lastly, the Court may take judicial notice of matters of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Against this backdrop, Plaintiff submits the following:

### III.    LEGAL ANALYSIS

#### a.    Plaintiff's 42 U.S.C. § 1983 claim(s)

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . ."

"To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 748 (D. Md. 2023) *quoting West v. Atkins*, 487 U.S. 42, 48 (1988). Liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) ("[L]iability is personal, based upon each defendant's own constitutional violations.").   It is undisputed that Officer Defendants at all times alleged were acting under color of state law.  (Pl. Ex. 15 ¶¶2 - 3). They were both Baltimore County Police Officers assigned to enforcing the laws of the State of Maryland.  Id.  Plaintiff has alleged that Officer Defendants violated Plaintiff's rights to be free from: (a) deprivations of liberty without due process of law, (b) excessive force, under the 4th and 14th Amendments to the U.S. Constitution, and (c) the government seizing her firearm without

probable cause or due process of law in violation of the 2nd, 4th, and 5th Amendments.

When Ofr. Jeffry unlawfully placed Plaintiff under arrest and took her into custody without probable cause while Sgt. McDowell aided and abetted the false arrest by ordering it and casually standing by and directing it as one of PO Jeffrey's supervisors, without interceding, both PO Jeffry and Sgt. McDowell equally violated Plaintiff's rights under the 4th and 14th Amendments. *Randall v. Prince George's County, Md.*, 302 F.3d 188, 203 (4th Cir. 2002) ("supervisory liability arises from the obligation of a supervisory law officer to insure that his subordinates act within the law."). Moreover, when PO Jeffry and Sgt. McDowell unlawfully and warrantlessly seized Plaintiff's firearm without probable cause nor due process, they both violated Plaintiff's right to bare arms under the 2nd and 4th and 5th Amendments of the Constitution. Therefore, they are liable to Plaintiff for her damages.

### b.    CP § 2-202 Warrantless arrests, arrests generally

Criminal Procedure Article § 2-202 provides the basis upon which an officer may make a warrantless arrest. It states the following:

> (a)    A police officer may arrest without a warrant a person who commits or attempts to commit a felony or misdemeanor in the presence or within the view of the police officer.

> (b)    A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the presence or within the view of the police officer may arrest without a warrant any person whom the police officer reasonably believes to have committed the crime.

> (c)    A police officer without a warrant may arrest a person if the police officer has probable cause to believe that a felony has been committed or attempted and the person has committed or attempted to commit the felony whether or not in the presence or within the view of the police officer.

The term probable cause is a "nontechnical conception of a reasonable ground for belief

of guilt." *Moulden v. State*, 212 Md. App. 331, 344 (2013).  Courts evaluate probable cause by

considering the totality of the circumstances, including the credibility of the facts, the nature of

the police information, the surrounding environment, the purpose of the police action, and the

suspect's conduct.  Id.  To establish probable cause, the facts and circumstances within the

officer's knowledge --or those supported by reasonably trustworthy information --must be

sufficient to warrant a prudent person's belief that the suspect had committed or was committing

a criminal offense.  Id.  While the standard requires less evidence than is necessary for a

conviction, it demands more than mere suspicion.  In this case, PO Jeffry and Sgt. McDowell

could not have had more than a *bare* suspicion, if that.  They effectuated the warrantless arrest of

Plaintiff in violation of CP §2-202's well established probable cause standard.  When PO Jeffry

and Sgt. McDowell arrived at the scene after being summonsed by Plaintiff, there was no

evidence that Plaintiff had committed or attempted to commit a crime in their presence or within

their view.  Nor did they have a *"reasonable"* belief that Plaintiff was committing a crime prior

to their arrival or at anytime thereafter.  Critically here, neither Defendant possessed *probable*

*cause* to believe that Plaintiff had committed or attempted to commit a felony.  The charge of 1st

Degree assault (felony) requires, at a minimum, evidence that the alleged victim was placed in

reasonable apprehension of an imminent battery with a firearm.  It is undisputed here that the

alleged victim never saw a firearm nor believed one was present.  Thus, the key element of

apprehension was entirely absent from Defendants' probable cause equation.  Under Maryland

law, a person cannot be guilty of assault "by threat" unless the victim is aware of the threat.

*Lamb v. State*, 93 Md. App. 422, 445 (1992).  Applying the totality of the circumstances analysis

–which includes weighing the environment, the information provided to the officers, and

Plaintiff's conduct --there were insufficient facts to lead a prudent person to conclude that

Plaintiff had committed 1st Degree assault, or any assault for that matter.  Therefore, Plaintiff's

assault arrest was unsupported by probable cause and thereby violated of her constitutional

rights.  By contrast, PO Jeffry and Sgt. McDowell did, in fact, have probable cause to arrest the

customer for indecent exposure and solicitation, two charges specifically listed under CP

§2-203(b)(6).  That provision expressly authorizes a warrantless arrest if an officer has probable

cause to believe a person committed indecent exposure in violation of Criminal Law §11-107.

Probable cause for the customer's arrest was clearly established here.  But he was not arrested.

Despite having clear legal authority to make the arrest based on Plaintiff's prompt 911 calls,

Plaintiff's eyewitness account, and consistent narrative, Defendants chose instead to arrest the

her –the senior citizen who was the victim of a sex crime. The decision to arrest Plaintiff rather

than her offender was not only legally erroneous but it was extremely suggestive of malice.

Plaintiff submits that her wrongful arrest on all of the charges but particularly felony 1st Degree

assault was complete nonsense, unsupported by any factual basis.  Consequently, it violated CP

§2-202, et seq., and deprived Plaintiff of her State and federal constitutional rights.

###        c.        No probable cause nor reasonable belief assault committed

PO Jeffry and Sgt. McDowell had neither probable cause nor a reasonable belief that

Plaintiff committed or should have been charged with 1st or 2nd Degree Assault.  To satisfy

probable cause for the charge of second degree assault (Intent to frighten) under the facts of this

case, it must, at the very least, be alleged that a person intentionally frightened another person

with the threat of imminent harmful or offensive contact *without* legal justification.  MPJI-Cr

4:01(A).  This case is replete with legal justification as acknowledged, accepted, and reported by

14

PO Jeffrys.  (Df. Jeffry BWC-D, 18:53 - 19:06), (Pl. Ex. 4 pp. 2 - 3).  As to the remaining

varieties of assault (offensive contact, attempted battery), none of them apply here.

      PO Jeffry and Sgt. McDowell were aware that Plaintiff was a 5'3, 60-year-old female

DoorDash driver, lawfully delivering food to a customer who had specifically requested

"hand-to-recipient" delivery rather than a drop-off delivery.  (Df. Jeffry BWC-A, 04:20–05:03).

Defendants also knew that the customer was a 6'3, 21-year-old male --youthful, virile, and spry.

Plaintiff was the visibly older and a more vulnerable elderly woman.  They further knew Plaintiff

made several 911 calls to report the customer exposing his erect genitals when answering the

door, --an act that shocked, offended, and "extremely troubled" Plaintiff.  (Pl. Ex. 14, Agnew

Stmt. Of PC p. 2), (Df. Jeffry BWC-A, 05:09–05:20); *see also* (Pl. Ex. 1 ¶9).  Plaintiff exchanged

"several words" and immediately retreated to her vehicle, moved and parked across the street

diagonally in front of Plaintiff's house and then to a nearby corner in the neighborhood, from

where she frantically called 911 multiple times.  (Pl' Ex. 4 p. 2).  Defendants also knew that

while Plaintiff was waiting for police to arrive, the customer was repeatedly texting and calling

her phone.  Id., at 2 - 3, (Df. Jeffry BWC-A, 05:47 - 54).  On the one call she answered, the

customer addressed her with an angry tone and a profanity-laced directive to leave his

community. (Pl. Ex. 1 ¶¶9 - 10).  After that, Plaintiff ignored the innumerable other harassing

calls from the customer that followed in rapid succession, and that apparently made the customer

angrier. Id.  PO Jeffry and Sgt. McDowell were also aware that the customer eventually exited

his home and "aggressively" approached Plaintiff's vehicle.  He yelled profanities, flailed his

arms, clenched his fists, and threatened to inflict serious bodily harm or death to her. (Pl. Ex.

¶10); (Pl. Ex. 4 p. 3); (Df. Jeffry BWC-D, 01:50 - 04:20; 04:46 - 53; 11:05 - 23; 18:53 - 19:25).

Given the totality of these circumstances, Plaintiff's fear of the customer was reasonable and well-founded.

Lead investigator and reporting officer, PO Jeffry expressly acknowledged the reasonableness of Plaintiff's fear during their encounter, as documented on body-worn camera (BWC) footage.  In speaking with Plaintiff, PO Jeffry assured her that her account --including her fear for her safety --would be documented in the police report:

> "So trust me, I'm going to put in your statement and I'll put in his statements . . . that you were in fear for your safety and that's going to be something that I also highlight in there because its how you felt in the moment, so I'll be putting that in the PC [probable cause statement]. (Df. Jeffry BWC-D. 18:53 - 19:06).

Defendant Jeffry further demonstrated a personal understanding of Plaintiff's reaction, stating:

> "If I were in your shoes, like being a uniformed personnel or previous, like retired uniformed personnel, I'd feel the exact same way."  (Df. Jeffry BWC-D. 17:40 - 17:50).

These statements, recorded contemporaneously, reflect not only recognition of Plaintiff's state of mind, but also the absence of any intent or conduct inconsistent with a claim of lawful self-defense.  *See* (Pl. Ex. 5 p. 5) ("[t]here was no criminal actions taken by Ms. Conway.").  At no point did the customer apologize or attempt to deescalate the encounter despite being the subject of a reported lewd act/indecent exposure complaint.  (Pl. Ex. 1 ¶33).  Consistent with her verbal commitment, PO Jeffry included in her statement of probable cause the following:

> Victim Agnew reported that he yelled at suspect Conway . . ." * * *
> "[A]s Victim Agnew walked toward [Conway's] vehicle, she grew fearful, thus retrieving her firearm from her purse for protection.  (Pl. Ex. 4 p. 4).

This language, drafted by the investigating officer herself, was determinative.  The Court Commissioner declined to find probable cause for either 1st - or 2nd -degree assault.  (Pl. Ex. 4 pp.

16

2 - 3).  Moreover, the State's Attorney's Office declined to prosecute the case, and according to

PO Jeffry, Assistant State's Attorney Samuel Dominick III advised that the charges would be

dismissed because "the articulable facts of the incident . . . highly suggested the arrest of

[Conway] was made prematurely." (Pl. Ex. 5 pp. 4 - 5).

PO Jeffry's own investigation thus established key facts supporting either perfect or

imperfect self-defense under Maryland law.  By including actual evidence of either perfect or

imperfect self-defense in her police report to support probable cause, the charge of first degree

assault could never stand.  *See* MPJI-Cr 5:07, *Notes, Comment.*  Self-defense applies to

assaultive crimes."  *Bynes v. State*, 237 Md. App. 439, 442 (2018).  As set forth in *Christian v.

State*, 405 Md. 306 (2008), perfect self-defense is a defense to assault and imperfect self-defense

can mitigate first degree assault to second degree assault.  These principles are reflected in

Maryland Pattern Jury Instruction MPJI-Cr 5:07, which provides that self-defense applies where:

> (1)    the defendant was not the aggressor. . .;
> (2)    the defendant actually believed that she was in immediate or
> imminent danger of bodily harm;
> (3)    the defendant's belief was reasonable; and
> (4)    the defendant used no more force than was reasonably necessary
> to defend herself in light of the threatened or actual harm. MPJI-
> Cr 5:07;

*see also State v. Marr*, 362 Md. 467, 472 - 73 (2001) (discussing self-defense).

Each of these elements are supported here.  Plaintiff never exited her vehicle, and only

removed her firearm from her purse and held it in a low-ready position --pointed toward the

passenger-side floorboard --after the customer aggressively "walk[ed] up" to her while inside of

her truck, yelling profanities, flailing his arms, clenching his fists, and issuing threats to do

bodily harm.  (Df. Jeffry BWC-A, 08:34 - 09:00) ("He walked <u>over to me</u> like he was getting

ready to do something."), (Df. Jeffry BWC-D, 18:34 - 18:43) (If he didn't *walk up to my truck*, I wouldn't have never, you know, the way he [aggressively] came over there."). These facts are not in genuine dispute. They are supported by evidence presented in this case, including PO Jeffry's BWC footage and the probable cause statement. Id. PO Jeffry's investigation revealed that Plaintiff reasonably believed that self-defense applied to the facts of this case. And Plaintiff's reasonable belief was enough to constitute legal justification for her benign retrieval of her firearm which was reasonably necessary to defend herself. Although Defendants claimed that the customer may have seen a Taser in Plaintiff's left hand, this evidence (1) supports the inference that the customer had gotten dangerously close to Plaintiff inside of her vehicle; or (2) contradicts the claim that he saw a weapon at all and was just being deceptive. He had a strong motive to remove the focus from his own illicit conduct because indecent exposure and solicitation are warrantlessly arrestable offenses --regardless of whether committed in the presence or view of police. CP §2-203(b)(6), (10). Either way, these facts fail to support probable cause for an assault and cannot support a failure to state a claim or summary judgment motion. The totality of the circumstances, including the investigative findings of the lead officer and the decisions of both the Court Commissioner and the State's Attorney, overwhelmingly support Plaintiff's position that her conduct was legally justified. (Pl. Ex. 5 p. 5). Therefore, use of force --if any --was both measured and reasonable in response to a perceived imminent threat, and the record, inclusive of Plaintiff's pleading, PO Jeffry's Statement of Probable Cause, Case Report, Map, and the BWCs provides no legal basis to conclude otherwise.

### d.    No probable cause to charge 1st Degree Assault

Under Maryland law, a charge of 1st-degree assault based on the intent-to-frighten theory

by use of a firearm cannot stand absent probable cause to support a charge of 2nd-degree assault. *Simms v. State*, 240 Md.App. 606, 628 (Md. App. 2019) ("Second degree assault is a lesser included offense of first-degree assault when the offenses arise out of the same event.). Absent a viable underlying 2nd-degree assault, a 1st-degree assault charge lacks foundation. Moreover, if the victim is not placed in reasonable apprehension by use of a firearm, a person cannot be properly charged with 1st degree assault. *See Lamb v. State*, 93 Md.App. 422, 445 (1992). Here, it is undisputed that the customer never saw a firearm. Again, Plaintiff remained inside her vehicle at all times and held the firearm in a "low ready" position, pointed toward her passenger -side floorboard. There is no allegation that Plaintiff brandished or pointed the weapon at the customer nor any indication that he saw the firearm at all. (Df. Jeffry BWC-D, 14:34 - 14:45). At most, the record reflects that he may have seen an object in Plaintiff's hand, which he speculated to be a Taser. This evidence is insufficient to establish reasonable apprehension of an imminent battery by use of a firearm. *See* CL §3-202(b)(2) ("A person may not commit an assault *with a firearm*."). (Pl. Ex. 5 p. 5) ("there was no criminal actions taken by Ms. Conway.").

*Lamb v. State*, 93 Md. App., 422, 445 (1992) is dispositive. According to *Lamb v. State*, even if a weapon is present, if a would-be victim of the threat is unaware of the threatening conduct, i.e., actual possession of a firearm, there can be no assault of this [1[st] degree assault - intent to frighten] variety. *See also, Harrod v. State*, 65 Md.App. 128, 138 (1985). Morever, if the would-be victim perceives the threatening conduct but knows, for instance, that the gun is defective, there is no apprehension of an imminent battery and, therefore, no assault of the threatening variety. *Lamb*, at 445. Therefore, without an allegation that Plaintiff brandished or pointed a firearm at the customer, there is insufficient information to charge Plaintiff with 1st

degree assault.

In the case of *Harrod v. State*, 65 Md.App. 128, 138 (1985), the court addressed a similar

situation involving assault.  There, the court explained:

> There is likewise insufficient evidence that appellant, by an unlawful
> intentional act, placed Christopher in reasonable apprehension of
> receiving an immediate battery.  By definition the victim must be aware
> of the impending contact. Wharton's Criminal Law § 180; LaFave &
> Scott, Criminal Law § 82 at 611. *See United States v. Bell*, 505 F.2d 539
> (7th Cir.1974), cert. denied, 420 U.S. 964, 95 S.Ct. 1357, 43 L.Ed.2d
> 442 (1975); *United States v. Rizzo*, 409 F.2d 400 (7th Cir.1959); *State v.
> LaMere* (Mont.) 621 P.2d 462 (1980); *State v. Barry*, 45 Mont. 598, 124
> P. 775 (1912). This is consistent with the tort theory of assault.  W.
> Prosser, Law of Torts § 10 (4th ed. 1971) ("Since the interest involved is
> the mental one of apprehension of contact, it should follow that the
> plaintiff must be aware of the defendant's act at the time, and that <u>it is
> not an assault to aim a gun at one who is unaware of it</u>.") (emphasis
> added).  *Harrod v. State*, 65 Md.App. 128, 138 (1985) *citing*
> Restatement (Second) of Torts §§ 21–22 (1966).

*See also Perry v. State*, 2017 WL 2709801 *5 (Md. 2017).

> "If the would-be victim perceives the threatening conduct but [does not
> know, for instance, what a firearm is, or what it can do], there is no
> apprehension of an imminent battery and, therefore, no assault of the
> threatening variety."

And last, in the case of *Lawson v. Morgan*, 2011 WL 1135895 *16 (D. Md. 2011), this

Court pointed out in the unpublished opinion the following:

> [Lawson] correctly argues that, to commit an assault of the intentional
> frightening variety, "[a]ll that is required in terms of perception is an
> apparent present ability from the viewpoint of the threatened victim."
> *Lamb v. State*, 93 Md.App. 422, 443, 613 A.2d 402 (1992), cert. denied,
> 329 Md. 110, 617 A.2d 1055 (1993) (emphasis added).  If the victim of
> the threat "is unaware of the threatening conduct, there can be no assault
> of this variety." Id. From these statements of the law, [Lawson] claims
> that the victim's own testimony that he or she was frightened is
> necessary to prove the intent to frighten variety of second degree assault.
>
> In making this argument, [Lawson] relies on *Harrod v. State*, 65
> Md.App. 128, 499 A.2d 959 (1985). This reliance, however, is
> misplaced. In *Harrod*, we did not determine that testimony from the

alleged victim was needed to establish that the victim was frightened.
We merely decided that the evidence was insufficient to prove that the
victim, a child asleep in his crib, was frightened because the child was
unaware that the defendant had thrown a weapon in the room where he
lay sleeping. *See* id. at 138, 499 A.2d 959.

Based upon the foregoing, if the victim, as here, is unaware that Plaintiff was armed with

a gun, when she told him to back up, whether the use of the firearm was justified or not, doesn't

matter.  The customer could not be frightened by a firearm if he never saw one or believed one

was present.  The customer saw what resembled a Taser and expressly rejected the notion he saw

a firearm.  (Pl. Ex. 4 p. 3).  A Taser is not a firearm.  Based thereupon, it is impossible for any

reasonable police officer to find probable cause to arrest Plaintiff for 1st degree assault.

### e.    No Immunity for Officers Jeffry and McDowell

"The doctrine of qualified immunity shields [law enforcement] officers from civil liability

so long as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S.

9, 12 (2021).  Qualified immunity "balances two important interests --the need to hold public

officials accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.

Callahan*, 555 U.S. 223, 231 (2009).  The Supreme Court laid out a two-step process for

resolving qualified immunity claims of government officials.  *See Saucier v. Katz*, 533 U.S. 194,

201 (2001).  First, a court must decide whether the facts that a plaintiff has alleged or shown

make out a violation of a constitutional right.  *See* Id.  Second, a court must decide whether the

right at issue was "clearly established" at the time of defendant's alleged misconduct.  Id.  Courts

may exercise discretion in deciding which of the two *Saucier* prongs "should be addressed first in

21

light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "That

means that we may grant qualified immunity on the ground that the purported right was not

clearly established without resolving the 'often more difficult question whether the purported

right exists at all.' " *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024). "In the Fourth

Circuit, we have a split burden of proof for the qualified-immunity defense; the plaintiff bears the

burden on the first prong, and the officer bears the burden on the second prong." *Stanton v.*

*Elliott*, 25 F.4th Cir. 227, 233 (4th Cir. 2022).

      Neither PO Jeffry nor Sgt. McDowell are entitled to qualified immunity for their

misconduct. Plaintiff has a right not be arrested under the 4th and 14th Amendment in the absence

of probable cause, and any officer witnessing an arrest without probable cause has a duty to

intervene which compounds the rights owed to Plaintiff. An arrest without probable cause, aided

and abetted by a supervisor, who ordered the arrest and stood by and watched it take place

compounds the violation of Plaintiff's rights under the 4th and 14th Amendments. Also, seizing a

persons firearm without probable cause or due process violates the 2nd, 5th, and 14th Amendments.

The law of arrest requiring probable cause as a predicate is clearly established in Maryland and

the United States. CP §2-202 (Warrantless arrests, generally), *Johnson v. State*, 356 Md. 498, 504

(1999) ("The legality of a warrantless arrest is determined by the existence of probable cause at

the time of the arrest.") *and U.S. v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990), *Beck v. Ohio*,

379 U.S. 89, 91 (1964). Probable cause is based upon the "totality of the circumstances."

*Illinois v. Gates*, 462 U.S. 213, 230 - 31 (1983). Only the facts and circumstances known at the

time of the arrest may be considered by the court in reviewing probable cause to arrest.

*McCraw*, 920 F.2d at 227. Again, Maryland law permits an officer to effect a warrantless arrest

of any person whom the officer reasonably believes to have committed a felony or misdemeanor, _if_ the offense was committed within the officer's presence or view.  *See* CP § 2-202(b); *Meyler v. Mayor and City Council of Ocean City*, 736 F.Supp.3d 272, 285 (D. Md. 2024).  The facts and circumstances known to PO Jeffry and Sgt. McDowell at the time of Plaintiff's arrest were as follows: (1) No criminal offense was committed either in their view or presence, (2) Plaintiff, 60, 5'3, was a senior citizen, (3) retired captain for the Baltimore City Sheriff's Department --first African-American female captain in its 180 year history, (4) trained in the use of a firearm, (5) by inference, trained in use of force and self-defense techniques, (6) on her DoorDash food delivery job, (7) was a victim of two alleged sex offenses (indecent exposure, solicitation), (8) retreated to her car for safety, (9) frantically called 911 multiple times, (10) was "aggressively" approached inside her vehicle by a 21 year old adult male, 6'3, while safely parked across the street from his residence, (11) who "yelled" at her, (12) used profanities directed at her, (13) issued threats of bodily harm to her, (14) flailed his arms at her, (15) clenched his fists toward her, (16) had gotten so dangerously close to her SUV that he could see an object in her "left" hand; (17) Plaintiff was fearful of him, (18) her fear was objectively reasonable given his aggressive behavior on display and her initial encounter with him when he answered his door with his genitals aroused and a devilish grin  –evidencing solicitation of assignation in violation of CL §11-306 (a) ("A person may not knowingly procure or solicit or offer to procure or solicit prostitution or assignation") and indecent exposure in violation of CL §11-107(b) ("A person may not commit the common law crime of indecent exposure."), *see also Duran v. State*, 180 Md.App. 65, 78 - 79 (Md. App. 2008) (for elements to common law offense of indecent exposure which necessitated "open and notorious lewdness"), (19) Plaintiff left the scene to file for criminal charges because the police

took too ling to arrive, and (20) Plaintiff lawfully in possessed her firearm.  The fact that Plaintiff

retrieved her firearm and held it down in the low ready position toward her passenger-side

floorboard in a manner consistent with her training, given the totality of the circumstances, does

not constitute probable cause to arrest her for any variety or degrees of assaults.  Self-defense is a

complete defense.  *Jarvis v. State*, 487 Md. 548, 555 (2024) (perfect self-defense is a total

defense to murder --and all lesser included offenses --and . . . necessitates an acquittal.").  PO

Jeffry and Sgt. McDowell knew that Plaintiff's reactions were in self-defense to the 21 year old

customer's physical approach and imminent threat.  They further knew that Plaintiff's reactions

were objectively and subjectively reasonable under the circumstances.  (Df. Jeffry BWC-D.

17:40 - 17:50, 18:53 - 19:06).   Their decision to arrest Plaintiff anyway, without probable cause,

violated clearly established law.  Consequently, neither PO Jeffry nor Sgt. McDowell enjoy

qualified immunity here.  And for virtually the same reasons, they are not entitled to statutory nor

common law public official immunity either.  *Houghton v. Forrest*, 412 Md. 578, 989 A.2d 223,

228 (2010) (holding that public official immunity does not apply to claims of assault, battery,

false arrest, false imprisonment, and violations of Articles 24 and 26 of the Maryland Declaration

of Rights).  They violated Plaintiff's rights under the Maryland Declaration of Rights, and the

torts alleged were intentional.  Neither common law nor statutory [CP §5-507] "public official

immunity" apply to intentional torts."  *Houghton v. Forrest*, 412 Md. 578, 586 (2010) (holding

that public official immunity does not apply to claims of assault, battery, false arrest, false

imprisonment, and violations of Articles 24 and 26 of the Maryland Declaration of Rights);

*Meyler*, 736 F.Supp.3d at 284 - 85.

        **f.**        **COUNT III, §1983 (Bystander Liability), McDowell**

Sgt. McDowell is liable under 42 U.S.C. § 1983 for bystander liability because he was present and in a supervisory capacity during the events that led to the violation of Plaintiff's constitutional rights. He also had knowledge of those violations and failed to take any reasonable steps to intervene. Under Fourth Circuit precedent, an officer may be held liable where: (1) he knew a fellow officer was violating someone's constitutional rights; (2) he had a reasonable opportunity to prevent the harm; and (3) he chose not to act. *See Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). Here, Sgt. McDowell either personally observed or was otherwise aware of the unlawful arrest or excessive force/abuse of authority by Officer Jeffry. As a supervisor on the scene, Sgt. McDowell had both the authority and opportunity to intervene, deescalate, or stop the constitutional violation(s) but failed to do so. His inaction --despite having a duty to intercede --renders him liable under §1983. Section 1983 imposes a duty to act, it is not just a prohibition on wrongdoing. Id. Officers who stand by while constitutional violations occur in their presence are not shielded from liability. Defendant is liable to Plaintiff under §1983 for bystander liability because he not only failed to intervene as PO Jeffry's supervisor, he ordered, encouraged, aided, and abetted Plaintiff's unlawful arrest.

### g.    COUNT IV, False Arrest, Jeffry & McDowell

Defendants are liable to Plaintiff for False Arrest because Plaintiff's arrest was not based upon probable cause nor legal justification. To prevail on a false arrest claim under §1983 and Maryland law, a plaintiff must show that she was arrested without legal justification. In both federal and state law, probable cause is the threshold requirement for a lawful arrest. *See Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *Ashton v. Brown*, 339 Md. 70, 120 (1995). Here, Plaintiff's arrest was based on an alleged 1st & 2nd-degree assault (intent-to-frighten), yet the

25

facts, when viewed objectively, do not support a reasonable belief that she committed a crime.
*See* (Pl. Ex. 5 p. 5) ("[t]here was no criminal actions taken by Ms. Conway.").  Plaintiff lawfully
possessed her firearm, remained inside her vehicle, and unholstered her weapon in a defensive
posture without brandishing nor pointing it at anyone.  There was no overt act of aggression and
no movement suggesting she had any unlawful intent to inflict harm.  Thus, both officers lacked
probable cause, rendering Plaintiff's arrest unconstitutional.  Sgt. McDowell, as the on-scene
supervisor, was not merely a bystander.  He either authorized, ratified, or allowed the arrest to
proceed in his presence despite the obvious absence of probable cause.  Therefore, he is just as
liable as PO Jeffry for violating Plaintiff.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

### h.    COUNT V, False Imprisonment, Jeffry & McDowell

For the same reasons as False Arrest, Defendants are liable for False Imprisonment.

### i.    COUNT VI, Assault & Battery, Jeffry & McDowell

Under Maryland law, a police officer may be held liable for battery when he uses force
that is not legally justified and liable for assault when he places another in imminent fear of
unlawful physical contact. *See French v. Hines*, 182 Md. App. 201, 257 (2008); *Richardson v.
McGriff*, 361 Md. 437, 452 (2000).  The use of force to effectuate detention without legal
justification gives rise to liability for assault and battery.  *See Ashton v. Brown*, 339 Md. 70, 119
n. 24 (1995).  Defendants PO Jeffry and Sgt. McDowell are liable for Assault & Battery.

### j.    COUNT VII, Malicious Prosecution, Jeffry

Under §1983, malicious prosecution claims implicate the 4th Amendment right to be free
from unreasonable seizures and 14th Amendment due process protections.  A §1983 plaintiff
must show a seizure pursuant to legal process was initiated without probable cause, and a

favorable termination. *See Lambert v. Williams*, 223 F.3d 257, 260 - 62 (4th Cir. 2000). Plaintiff

has clearly established that she was arrested without probable cause and the charges were

dismissed due to inadequate "articulable facts" and a "premature" arrest. See (Pl. Ex. 5 pp. 4-5),

(Pl. Ex. 12).

### k.     COUNT VIII, Article 24 & 26, Jeffry

PO Jeffry and Sgt. McDowell violated Article 26 by seizing Plaintiff without a warrant

and without probable cause, and by using unnecessary or excessive force during that seizure.

Plaintiff was arrested for 2nd-degree assault even though her conduct—defensively unholstering a

legally possessed firearm without threatening or pointing it at anyone—did not amount to

criminal conduct under Maryland law. The officers lacked probable cause and arrested her,

violating her right to be free from unreasonable seizures under Article 26. Any physical force

used to handcuff, remove and detain Plaintiff without justification constitutes excessive force and

a violation of her Article 26 rights. Both Jeffry, as the arresting officer, and Sgt. McDowell, as

the supervising officer who permitted and approved the arrest, are liable for this violation. Their

actions also violated Article 24 by subjecting Plaintiff to criminal prosecution and detention

without legal basis, and by doing so in a deliberate or reckless disregard for her constitutional

rights. Initiating baseless criminal charges --without evidence, and with knowledge that

Plaintiff's conduct was lawful --amounts to a deprivation of liberty without procedural due

process. This includes both false arrest and malicious prosecution, which are actionable under

Article 24 when committed by state actors. *See Okwa v. Harper*, 360 Md. 161, 204 (2000)

(recognizing Article 24 claim for malicious prosecution and abuse of process). By initiating and

sustaining a criminal process unsupported by probable cause, PO Jeffry and Sgt. McDowell

violated Plaintiff's due process rights guaranteed under Maryland law.

### l.    COUNT IX, Article 24, 26 (Bystander Liability), McDowell

Sgt. McDowell is liable to Plaintiff for the violation of her Maryland constitutional rights under Article 24 (due process) and Article 26 (unreasonable search and seizure) because he was present during, aware of, and failed to intervene in constitutional violations committed by Officer Jeffry --despite having the authority and opportunity to prevent them.  Maryland courts recognize individual officer liability under Articles 24 and 26 where the officer either: (1) Directly participates in the unconstitutional act, or (2) Stands by and fails to intervene to prevent another officer's constitutional violation when able to do so.  Maryland "bystander liability" is functionally equivalent to the federal §1983 standard. *See Littleton v. Swonger*, 502 F. Supp. 3d 459, 470 - 71 (D. Md. 2020) (holding that officers may be liable under Articles 24 and 26 for failing to stop a known constitutional violation); *Richardson v. McGriff*, 361 Md. 437, 452 (2000); *DiPino v. Davis*, 354 Md. 18, 50 - 55 (1999).  Sgt. McDowell is liable under Maryland's Declaration of Rights for violating Article 26, by failing to prevent an unlawful arrest and seizure that occurred in his presence and under his direct supervision and control.  He is liable for violating Article 24, by allowing Plaintiff to be subjected to criminal prosecution and detention without due process of law; and for doing so despite having actual and constructive knowledge, authority to act and a clear opportunity to intervene.  His inaction in the face of a known constitutional violation renders him liable under well-established Maryland law.  Id.

### m.    pre-discovery motion on excessive force claim

Summary judgment is inappropriate where a party has not had a fair opportunity to conduct discovery. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Under Rule 56(d), a

court may defer or deny a summary judgment motion when the nonmovant shows it cannot present essential facts without further discovery. The Fourth Circuit has held that such relief should be "liberally granted" to prevent premature rulings. *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014). Courts must decline to consider summary judgment where the nonmovant lacks access to necessary evidence. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). PO Jeffry's BWC-B footage documents at 07:25 just before it shuts off, that she was discussing with her supervisors whether she had probable cause to arrest Plaintiff for first degree assault and ultimately decided at that time that she did not. (Df. Jeffry BWC-B, 07:19 - 07:34). If PO Jeffry lacked probable cause or reasonable belief to arrest for 1st degree assault, under the Maryland Warrantless Arrest statute, she lacked the authority make an arrest her for 2nd degree assault. *See* CP §2-202. Again, no assault of any variety or degree was committed or being committed in PO Jeffry's, McDowell's, et al.'s presence or within their view. *See* CP §2-202, *Meyler,* 736 F.Supp.3d at 285. Simple assault is not an enumerated crime under CP §2-203. More importantly, PO Jeffry's BWC video shuts off during PO Jeffry's ongoing recorded conversation about the case with her supervisor. (Df. Jeffry BWC-B, 04:29 - 07:34). Plaintiff is entitled to the remainder of the documented conversation between PO Jeffry and one of her supervisors captured on her BWC. Plaintiff is also entitled to PO Jeffry's BWC recorded conversation with Plaintiff when she stopped PO Jeffry at the Walgreens store on her way to the precinct. *See* (Df. Jeffry BWC-B, 05:15 - 5:30) (" . . . [S]he ends up finding me at Walgreens". . .). She is further entitled to BWC footage documenting PO Jeffry's travel from the Walgreen's store to her arrival at 1733 Edgewood Road residence.

      **n.    Plaintiff's excessive force pain & suffering not adequately captured**

Next, PO Jeffry and Sgt. McDowell made mention of the fact that Plaintiff did not adequately express any substantial injuries on the BWC directly and proximately caused by the excessive force alleged during her arrest without probable cause.  Plaintiff submits, there is no controlling precedent endorsing a "substantial injury" requirement to bring an excessive force claim.  *See French*, 182 Md.App. at 262.  All claims of excessive force --whether deadly or not -- in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are to analyzed under the 4th Amendment and its "reasonableness" standard.  *See French*, 182 Md.App. at 261 - 63.  The use of force, technical or not, to effectuate an unlawful arrest lacking probable cause constitutes excessive force.  Id. at 264.  Not to mention, Plaintiff's complaints about her pain & suffering is adequately documented in Jeffry's BWC footage.   (Df. Jeffry BWC-B, 02:30 - 40), (Df. Jeffry BWC-D, 09:19 - 25, 14:02 - 17, 22:05 - 11).  Plaintiff's acknowledgment and comments that Jeffry's was just "doing her job" were either sarcasm or made to mollify PO Jeffry in order to ensure PO Jeffry promptly processed her paperwork so she could return home to her family as swiftly as possible.  (Df. Jeffry BWC-D 22:30 36, 33:08 - 12).  Everything Defendants did to Plaintiff was wrongful and she had no intention of relieving them of their guilt in the short term or liability in the long run.

## IV.    CONCLUSION

For the foregoing reasons, Defendants PO Jeffry and Sgt. McDowell's motion to dismiss should be respectfully DENIED.  Neither officer had probable cause or a reasonable belief to arrest Plaintiff in the case subjudice.  For those same reasons, Plaintiff's Cross-motion for summary judgment should be GRANTED.

Respectfully submitted,

_____/s/_____

J. Wyndal Gordon
Attorney ID#:  9506210156
Fed. Bar ID#: 23572
**THE LAW OFFICE OF J. WYNDAL GORDON, P.A.**
20 South Charles Street,
Suite 400
Baltimore, Maryland 21201
(410) 332-4121
jwgaattys@aol.com
Counsel for Plaintiff Jacqueline Conway


_____/s/_____

Raouf M. Abdullah, Esq.
Attorney ID#: 0112190001
**RMA & ASSOCIATES, LLC**
14714 Main Street, First Floor
Upper Marlboro, MD 20772
(301) 979-7427
rma@rmalawfirm.com
Co-Counsel for Plaintiff Jacqueline Conway

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY**, this _14th _ day of _Jul._, 2025, that the forgoing Opposition to Motion to Dismiss or in the alternative for Summary Judgment and Cross-Motion for Summary Judgment was served upon:

Bradley Neitzel
Assistant County Attorney
**BALTIMORE COUNTY OFFICE OF LAW**
400 Washington Avenue,
Seond Floor
Towson, MD 21204

_____/s/_____
J. Wyndal Gordon

| JACQUELINE CONWAY | * | IN THE |
|---|---|---|
| Plaintiff | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| JASMINE JEFFRY, ET AL. | * | OF MARYLAND |
| Defendant | * | *Northern District* |
| | * | Case:  1:25-cv-01826-MJM |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

**UPON CONSIDERATION**, of Defendants Motion to Dismiss and/or for Summary Judgment, and the Opposition and Cross-Motion for Summary Judgment by Plaintiff;

**IT IS HEREBY ORDERED**, this ___ day of ____, 2025, that the foregoing Defendants' Motion be DENIED as to Defendants

**IT IS FURTHER ORDERED** that Plaintiff's Counter-Motion for Summary Judgment be GRANTED.

_____
JUDGE

| | | |
|---|---|---|
| JACQUELINE CONWAY | * | IN THE |
| Plaintiff | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| JASMINE JEFFRY, ET AL. | * | OF MARYLAND |
| Defendant | * | *Northern District* |
| | * | Case:  1:25-cv-01826-MJM |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>TABLE OF CONTENTS</u>

1. Jacqueline Conway Affidavit, Plaintiff

2. PO Jasmine Jeffry's Charge Summary (10/29/24)

3. PO Jasmine Jeffry's Statement of Charges (10/29/24)

4. PO Jasmine Jeffry's Statement of Probable Cause (10/29/24)

5. PO Jasmine Jeffry's Case Report (10/30/24)

6. PO Jasmine Jeffry's Text Message(s) to Plaintiff (10/30/24)

7. Google Maps of 1733 Edgewood Road, Loch Raven, MD

8. Df. Ex. A (Filed by Defendants)

9. Df. Ex. B (Filed by Defendants)

10. Df. Ex. C (Filed by Defendants)

11. Df. Ex. D (Filed by Defendants)

12. Notice of Dismissal

13. The Baltimore Banner News Article re: Plaintiff (11/26/2024)

14. PO Jasmine Jeffry Crim. Summons & Charges, etc., Keyon Agnew (11/27/24)

15. Plaintiff's Complaint and Demand for Jury Trial