## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JACQUELINE CONWAY,          *

                              *

          Plaintiff,       *

    v.                         *

                              *     Civil Action No.: 1:25-cv-01826-MJM

JASMINE JEFFRY,            *

et al.,                           *

                              *

          Defendants.    *

                              *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AND REPLY IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, by and through undersigned counsel submit this Opposition to Plaintiff's Cross-Motion for Summary Judgment and reply in further support of Defendants' Motion for Summary Judgment:

## ARGUMENT

**I.     PLAINTIFF FAILS TO ESTABLISH A BASIS FOR SUMMARY JUDGMENT AND MISCHARACTERIZES THE RECORD.**

Plaintiff's Opposition to Motion to Dismiss or in the Alternative for Summary Judgment and Cross-Motion for Summary Judgment (ECF 14) lacks a clear and concise basis for Plaintiff's cross-motion for summary judgment. Summary judgment is appropriate only where the movant shows there is no genuine dispute as to any material fact based on admissible evidence. Fed. R. Civ. P. 56(a)(c)(1)(A). While the Plaintiff's Motion provides a statement of facts based on her perspective of the situation, she fails to address the totality of the circumstances, and fails to address

any portion of the interaction with Mr. Agnew. In review of the body worn camera

footage exchanged in this case, Mr. Agnew states to Officer Jeffry on at least two

occasions during the officer's investigation that the Plaintiff stated to Mr. Agnew that

she was going to put bullets in him. Plaintiff also states that she did not have a taser

in her vehicle, only her gun, and that Mr. Agnew simply did not know what it was:

> Mr. Agnew to Office Jeffry: "She said to me, 'Don't come up
> to my vehicle, I'm going to put some bullets in you,'"
> Officer Jeffry: "Did you see anything?"
> Mr. Agnew: "Ah, she had a taser, I know that. I don't know
> about a gun or anything. I backed up…I didn't want to test
> nothing out." 2:33 - 2:50

> Plaintiff statement to Officer Jeffry: "He came over to my
> truck and I pulled my gun and told him 'Get the fuck away
> from my truck.' And he said, 'I don't want no trouble' and
> then I said, 'I don't want to give you none. So, get the hell
> away from my vehicle.'" 6:17

> Officer Jeffry to Plaintiff: "Did you remove the gun from the
> holster? Did you point it at him directly?"
> Plaintiff: "Yeah. When he came over, because he walked
> over to me like he was getting ready to do something…I
> sure did."
> Officer Jeffry: "So you pulled it out and pointed it in his
> direction?"
> Plaintiff: "No, no. I pulled it right here like this [motions
> that she had the gun on the passenger seat next to her]…I
> pulled it out like this and he must have saw it…because he
> was standing away from my…he backed up and he said 'I
> don't want no trouble' and then I said, 'I don't want to give
> you none, so get the fuck away from my vehicle.' No, I didn't
> point it at him." 8:26 – 9:04

(Officer Jeffry BWC **Exhibit A** footage 2024-10-29 1513)

> Mr. Agnew: "…I'm not for sure what I heard…she said was
> going to put bullets in me…I immediately just backed away
> from the car."

> Officer Jeffry: "OK. So, you didn't see anything…no firearm, no nothing…nothing pointed at you?"
>
> Mr. Agnew "The taser was pointed at me, I know that…with her left hand." 0:58 – 1:21
>
> …
>
> Office Jeffry to Plaintiff: "Ma'am you didn't have a taser in your hand, did you?"
>
> Plaintiff: "No, I don't have a taser. No. When I'm working, when I DoorDash, I have my weapon here while I'm driving [indicated passenger seat next to her]…when I saw him coming, pulled it out, held it like this, and when he came over, I made sure he saw it and I told him get the fuck away from my vehicle and he said I don't want no trouble and he backed up…" 2:08-3:33

(Officer Jeffry BWC **Exhibit B** footage 2024-10-29 1526.)

At no time during Plaintiff's interaction with the officers did she indicate that she was fearful or that she felt she was unable to leave the scene. Plaintiff herself initially sought out officers to report the incident – she left the scene and then returned with Officer Jeffry. Plaintiff remained at the scene and continued to interact with officers during the investigation because Plaintiff wanted to press charges against Mr. Agnew. In fact, during one interaction with Officer Jeffry, Plaintiff confirmed that she believed that there might have been "something wrong with [Mr. Agnew]" mentally, and that he probably "learned his lesson and won't do that kind of thing again to anyone else."

Even in consideration of the facts in a light most favorable to Plaintiff's version of the facts, officers at the scene of the incident had to consider statements from all parties that were being provided to them during the investigation, which included statements from Mr. Agnew as well as statements from the Plaintiff. Plaintiff stated that she pulled out her gun and she thought he must have seen it "because he was

standing away from my...he backed up and he said 'I don't want no trouble' and then

I said, 'I don't want to give you none, so get the fuck away from my vehicle.'" Mr.

Agnew indicated that he saw a taser pointed at him – but the Plaintiff confirmed she

did not have a taser, only her gun. Mr. Agnew also stated to police at least twice that

the Plaintiff said she was going to put bullets in him. Plaintiff's motion only relies on

her own self-serving statements and half the story from her perspective only. As the

Plaintiff bears the burden to show there is no genuine dispute of material facts in her

favor, her partial recitation of the facts only from her perspective make it impossible

to grant summary judgment based on the conflicting accounts of the incident.

Plaintiff's motion for summary judgment should be denied.

## II.    PROBABLE CAUSE EXISTED AS A MATTER OF LAW TO ARREST AND CHARGE PLAINTIFF.

Maryland law authorizes police officers to execute warrantless arrests, *inter

alia,* for felonies committed in an officer's presence or where an officer has probable

cause to believe that a felony has been committed or is being committed in the

officer's presence. *Md. Ann. Code,* Art. 27, § 594B (1996) (repealed 2001). A

warrantless arrest of an individual in a public place for a felony, or a misdemeanor

committed in the officer's presence, is consistent with the Fourth Amendment if the

arrest is supported by probable cause. *United States v. Watson,* 423 U.S. 411, 424, 96

S.Ct. 820, 46 L.Ed.2d 598 (1976); see *Atwater v. Lago Vista,* 532 U.S. 318, 354, 121

S.Ct. 1536, 149 L.Ed.2d 549 (2001) (stating that "[i]f an officer has probable cause to

believe that an individual has committed even a very minor criminal offense in his

presence, he may, without violating the Fourth Amendment, arrest the offender").

Defendants should be granted summary judgment on the claims of false arrest, false imprisonment, and federal and state constitutional violations and Plaintiff's summary judgment must be denied.

Probable cause is an objective standard, not based on actual guilt. The fact that a Court Commissioner declined to find probable cause or the fact that the State's Attorney did not pursue the case further is irrelevant to a probable cause determination at the time of the arrest. The fact that Officer Jeffry could relate to the Plaintiff, as "retired uniformed personnel" is irrelevant to a probable cause determination at the time of the arrest. There was no evidence during the investigation at the scene of any weapon or actual threat of harm to the Plaintiff from Mr. Agnew – and yet Plaintiff admitted multiple times to threatening Mr. Agnew with her gun. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366 (2003). Officers are not required to resolve every factual dispute before arrest. Under both Maryland and federal law, probable cause to support an arrest is essentially a reasonable belief that the person to be arrested has committed a crime. (ECF No. 5-1 at 6). Plaintiff by her own admission to officers confirms that she verbally threatened and she intended to make sure that Mr. Agnew saw her gun. Mr. Agnew stated to Plaintiff, "I don't want no trouble," and Plaintiff responded "I don't want to give you any," while holding what Mr. Agnew thought was a taser, but which in fact was the Plaintiff's gun. Plaintiff stated to Officer Jeffry on multiple occasions that she removed her gun

from the holster and "made sure that [Mr. Agnew] could see it." There is no indication that the Mr. Agnew had any weapon. Mr. Agnew stated to Officer Jeffry that the Plaintiff threatened to put bullets in him. Under an objective standard, in light of the totality of the circumstances, officers had probable cause to proceed with the arrest of the Plaintiff. Defendants should be granted summary judgment on the claims of false arrest, false imprisonment, all claims under 42 U.S.C. § 1983, and federal and state constitutional violations.

### III.    THE OFFICERS HAD QUALIFIED IMMUNITY AS PROBABLE CAUSE EXISTED.

The grant of qualified immunity to government officials ensures that officials can perform their duties free from the specter of endless and debilitating lawsuits. *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (1991). *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Without such an immunity, the operations of government would be immobilized. "[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id*. The ability of police officers to protect the public can be severely hampered, however, if their every decision is subject to second-guessing in a lawsuit. To guard against these crippling effects, the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson*, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6. Thus, a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment. *See, e.g., Harlow v.*

*Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982).

"The entitlement is an immunity from suit rather than a mere defense to liability; ...

it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v.*

*Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

Because qualified immunity is designed to shield officials not only from

ultimate liability but also from the hardships of litigation itself, "the immunity shield

is necessarily more protective than is the defense on the merits." *Gott*, 895 F.2d at

998. This broader protection is reflected in a test of "objective reasonableness" for

entitlement to qualified immunity. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 344, 106

S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986). This objective test involves an inquiry into

whether a government official has violated "clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738. Under this formulation, a plaintiff may

prove that an official has violated his rights, but an official is nonetheless entitled to

qualified immunity if a reasonable person in the "official's position could have failed

to appreciate that his conduct would violate" those rights. *Gott*, 895 F.2d at 998. The

very idea of reasonableness requires that courts accord interpretive latitude to official

judgments. Because there was probable cause and legal justification for the arrest,

the officers had qualified immunity in this matter.

WHEREFORE, Defendants respectfully request this Honorable Court issue an

Order granting Defendants' Motion to Dismiss or, in the alternative, for Summary

Judgment, deny Plaintiff's Cross-Motion for Summary Judgment, and entering

judgment in favor of Defendants as to all claims.

Respectfully submitted,

_____/s/_____

BRADLEY J. NEITZEL (Bar No. 26787)
ERIN M. CHEIKH (Bar No. 13908)
Assistant County Attorneys
bneitzel@baltimorecountymd.gov
echeikh@baltimorecountymd.gov
Baltimore County Office of Law
400 Washington Avenue
Towson, Maryland 21204
(410) 887-4420
Attorneys for Defendants