IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACQUELINE CONWAY,             *

                            *

       **Plaintiff,**         *

                            *    **Civ. No. MJM-25-1826**

   **v.**                      *

                            *

**JASMINE JEFFRY,** *et al.*,    *

                            *

     **Defendants.**      *

                            *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## MEMORANDUM OPINION

Plaintiff Jacqueline Conway ("Plaintiff") initiated this civil action against defendants Jasmine Jeffry and Bryan McDowell ("Defendants"), two officers of Baltimore County Police Department, alleging several violations of her rights under the U.S. Constitution and Maryland Declaration of Rights, false arrest and imprisonment, assault and battery, bystander liability, and malicious prosecution. ECF No. 2 (Compl.) at 7–24. This matter is before the Court on Defendants' Motion to Dismiss Complaint or for Summary Judgment (ECF No. 5) and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 14). No hearing is necessary to resolve these motions. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court shall grant in part and deny in part Defendants' motion, deny Plaintiff's motion, and remand the remaining state-law claims to the Circuit Court of Maryland for Baltimore County.[1]

---

[1] On March 31, 2026, the Court entered an Order granting Defendants' motion in full. Upon further consideration of the record, however, the Court will not dismiss, but will decline to exercise supplemental jurisdiction, over the state-law claims asserted in the Complaint. Accordingly, the prior Order shall be vacated, and an Amended Order will be entered consistent with this Memorandum Opinion. *See* Fed. R. Civ. P. 59(e) (permitting court to alter or amend final judgment).

## I.    BACKGROUND

### A.  Factual Background

Plaintiff is a retired Captain of the Baltimore City Sheriff's Department; she retired "due to back issues and career-ending back surger(ies)." ECF No. 14-1 (Conway Aff.), ¶¶ 1, 3. On October 29, 2024, Plaintiff was working part-time as a food delivery driver for DoorDash. *Id.* ¶ 6. That day, at approximately 2:03 p.m., Plaintiff arrived at a residence in Baltimore County, Maryland, to complete a delivery. *Id.*; *see also* ECF No. 14-7 (Pl. Ex. 7). According to Plaintiff, the customer, Keyon Agnew, answered the door with only a t-shirt on and his genitals exposed. ECF No. 5-2 (Defs. Ex. A) at 04:32–05:02; ECF No. 14-1, ¶ 7. Plaintiff immediately returned to her vehicle, moved her car across the street from Agnew's residence, and called 911 multiple times. ECF No. 5-2 at 05:32–05:38; ECF No. 14-1, ¶ 9; ECF No. 14-4 (Pl. Ex. 4) at 2; ECF No. 14-5 (Pl. Ex. 5) at 4.

While waiting for emergency services to arrive, Plaintiff received numerous phone calls and texts from Agnew. ECF No. 5-2 at 05:40–05:53; ECF No. 14-1, ¶ 9; ECF No. 14-5 at 4. Agnew eventually left his residence and approached Plaintiff's vehicle, fully clothed. ECF No. 5-2 at 06:16–06:18; ECF No. 5-3 (Defs. Ex. B) at 02:57–03:01; ECF No. 14-1, ¶ 10; ECF No. 14-4 at 2; ECF No. 14-5 at 4. Plaintiff, a lawful gun owner, retrieved her firearm from her purse and told Agnew to "get the fuck away from [her] truck." ECF No. 5-2 at 06:18–06:22; ECF No. 5-3 at 02:33–02:37; ECF No. 14-1, ¶¶ 2, 11–12; ECF No. 14-4 at 2. Agnew complied and returned to his residence, and Plaintiff stored her firearm. ECF No. 14-1, ¶ 12.

Plaintiff continued to wait in her car, but when no officer arrived at the scene, she decided to drive to the Baltimore County Police Department precinct in Towson, Maryland to press charges against Agnew. *Id.* ¶ 13. While driving to the precinct, Plaintiff saw Defendant Jeffry, a Baltimore

County Police Officer, in the parking lot of a Walgreens store. *Id.* Plaintiff stopped to speak with Defendant Jeffry about her encounter with Agnew, after which they proceeded back to the scene of the incident. *Id.* Plaintiff remained in her vehicle while Defendant Jeffry began investigating the incident by obtaining accounts from Plaintiff and Agnew. *See* ECF Nos. 5-2 & 5-3. The investigation, as well as the remainder of Defendants' encounter with Plaintiff that day, was captured on Defendant Jeffry's body-worn camera ("BWC").

Defendant Jeffry's investigation revealed conflicting accounts of the incident. Agnew told Defendant Jeffry that when Plaintiff notified him that she was at his front door with his DoorDash order, he answered the door while wearing a t-shirt and underwear. ECF No. 5-2 at 01:34–01:43; ECF No. 14-4 at 3; ECF No. 14-5 at 4. He also told Defendant Jeffry that when he later approached Plaintiff's vehicle, Plaintiff told him, "Don't come up to my vehicle, I'm put some bullets in you." ECF No. 5-2 at 02:26–02:36. Agnew added that when he was near Plaintiff's vehicle, he could see a "taser" in Plaintiff's left hand that was pointed directly at him. ECF No. 5-3 at 01:10–01:13. Agnew denied, however, seeing Plaintiff with a gun or seeing Plaintiff point a firearm at him. ECF No. 14-1, ¶ 17; ECF No. 14-4 at 3; ECF No. 14-5 at 4. Plaintiff told Defendant Jeffry that when Agnew approached her vehicle, he walked over "like he was getting ready to do something." ECF No. 5-2 at 08:36–08:41. Plaintiff also told Defendant Jeffry that she did not have a taser, ECF No. 5-3 at 02:08–02:14, and that she had her firearm in her right hand pointed downward towards the passenger-side floorboard when Agnew was near her vehicle, *id.* at 02:42–02:48; *see also* ECF No. 5-2 at 08:44–08:48; ECF No. 14-1, ¶ 11. Plaintiff stated that she "made sure [Agnew] saw [her firearm]," ECF No. 5-3 at 02:48–02:51, but she denied aiming her firearm towards Agnew, ECF No. 5-2 at 08:59–09:01. In explaining how she used her weapon during the incident with Agnew, Plaintiff shared with Defendant Jeffry that she retired from her role as Captain due to having back

surgery, though she did not indicate how recent the surgery was or that it continued to cause her pain. ECF No. 5-3 at 02:30–02:40.

Defendant McDowell, a Sergeant with the Baltimore County Police Department, arrived at the scene of the incident during Defendant Jeffry's investigation. ECF No. 14-1, ¶ 14. After parking behind Plaintiff's vehicle, Defendant McDowell asked Plaintiff to exit her vehicle. ECF No. 5-4 (Defs. Ex. C) at 00:40–00:54, 01:07–01:09; *see also* ECF No. 5-5 (Defs. Ex. D) at 01:14–01:16. Once Plaintiff was outside her vehicle, Defendant Jeffry informed Plaintiff that she was being arrested and charged with first-degree assault. ECF No. 5-4 at 01:57–02:10; ECF No. 5-5 at 02:03–02:16. Defendants also seized Plaintiff's firearm. ECF No. 14-1, ¶ 32.

Defendant Jeffry walked Plaintiff to her police vehicle, an SUV, and applied handcuffs to Plaintiff's wrists behind her back, gently patted Plaintiff down, assisted Plaintiff in entering the backseat of the vehicle by lightly touching Plaintiff's right shoulder and giving her direction, and buckled Plaintiff's seatbelt. ECF No. 5-5 at 04:05–04:40, 07:00–07:17, 07:51–08:22, 09:09–09:30. Shortly after being seated in the back of Defendant Jeffry's vehicle, Plaintiff stated, "This is so uncomfortable." *Id.* at 09:21–09:24. As Defendant Jeffry drove Plaintiff to the Towson police precinct for booking procedures, Plaintiff asked Defendant Jeffry to "put [the vehicle's] back window up" because she did not want anyone to see her, and Defendant Jeffry complied, responding, "Yes ma'am." *Id.* at 10:52–10:57. Plaintiff expressed discomfort and pain in her back twice during the ten-minute ride to the precinct. The first instance occurred when Plaintiff stated, "oh my god, and my back," the rest of her statement inaudible. *Id.* at 14:02–14:06. Defendant Jeffry responded, "I'm trying to get you [to the precinct] pretty quick," and Plaintiff replied, "that's okay." *Id.* at 14:06–14:08. The second instance occurred when Plaintiff stated, "I have rods in my back, these handcuffs is tearing [them] up," *id.* at 19:28–19:33, to which Defendant Jeffry offered

no response. Beyond those two comments, the two engaged in light conversation during the trip. *Id.* at 10:04–20:45; ECF No. 14-4 at 4. After arriving to the precinct, Plaintiff asked Defendant Jeffry to assist her in stepping out of the vehicle because of the "rods in [her] back," and Defendant Jeffry complied. *Id.* at 22:05–22:13. Plaintiff then thanked Defendant Jeffry "for being kind to [her]," and Defendant Jeffry replied, "Of course." *Id.* at 22:13–22:17. After exiting the vehicle, the BWC footage shows Plaintiff walking unassisted into the precinct and sitting and removing her shoes, shoelaces, and belt without any apparent issue or expression of pain or discomfort. *Id.* at 22:25–22:57, 23:43–25:11, 25:35–25:44, 25:56–26:11, 26:56–27:16. Plaintiff now claims that her handcuffs were "applied too tight[ly] and caused severe pain due to [her] recent back surgeries and transportation in the cramped back seat of PO Jeffry's police car." ECF No. 14-1, ¶ 23.

Plaintiff was charged with first- and second-degree assault. *See* ECF Nos. 14-2 (Pl. Ex. 2) & 14-3 (Pl. Ex. 3). She was released from the Towson precinct the same day as her arrest, "as the Baltimore County Court Commissioner determined there was no probable cause for the charges against her." ECF No. 14-5 at 4.

On October 30, 2024, Defendant Jeffry texted Plaintiff, notifying her that she "expressed [her] concerns [about Plaintiff's arrest] with [her] direct supervisors th[at] morning[,]" and that they would be "reaching out to the [State's] [A]ttorneys office in reference to this incident." ECF No. 14-6 (Pl. Ex. 6). Defendant Jeffry also indicated that the police were "hoping to pursue charges against [Agnew]." *Id.* Later that day, Defendant Jeffry contacted a Baltimore County's Assistant State's Attorney about the incident involving Plaintiff and Agnew. ECF No. 14-5 at 5. Because Defendant Jeffry believed that the "articulable facts of the incident . . . highly suggested that [Plaintiff's arrest] was made prematurely and without a completed and thorough investigation of

all possible facts," Defendant Jeffry "requested that [the Assistant State's Attorney] review the charges against [Plaintiff]." *Id.*

On November 22, 2024, the assault charges against Plaintiff were dismissed. ECF No. 14-12 (Pl. Ex. 12). Five days later, Agnew was charged with indecent exposure in connection with the incident involving Plaintiff. ECF No. 14-14 (Pl. Ex. 14).

### B. Procedural History

On March 3, 2025, Plaintiff initiated this action in the Circuit Court of Maryland for Baltimore County. *See* ECF No. 1-1. On June 9, 2025, Defendants removed the action to this Court under 28 U.S.C. §§ 1331 and 1441(a). ECF No. 1. The Complaint sets forth federal and state constitutional claims, along with claims under Maryland common law. Specifically, Counts I and II assert claims under 42 U.S.C. § 1983 against Defendant Jeffry and Defendant McDowell, respectively, based on alleged violations of Plaintiff's rights under the Second, Fourth, and Fourteenth Amendments of the U.S. Constitution; Count III alleges bystander liability under § 1983 against Defendant McDowell; Counts IV and V allege false arrest and false imprisonment under Maryland law; Count VI alleges assault and battery under Maryland law; Count VII alleges malicious prosecution by Defendant Jeffry under Maryland law; Count VIII alleges that Defendant Jeffry violated Plaintiff's rights under Articles 24 and 26 of the Maryland Declaration of Rights; and Count IX alleges aiding and abetting liability under Articles 24 and 26 against Defendant McDowell. *See* Compl. ¶¶ 24–77.

On June 16, 2025, Defendants filed a motion to dismiss the Complaint under Rule 12(b)(6) or, alternatively, a motion for summary judgment under Rule 56. ECF No. 5. Plaintiff filed a response in opposition to Defendants' motion combined with a cross-motion for summary judgment. ECF No. 14. Defendants filed a response in opposition to Plaintiff's motion and reply

in further support of their motion. ECF No. 18. Plaintiff did not file a reply in support of her motion.

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may seek dismissal for "failure to state a claim upon which relief can be granted[.]" To survive the challenge, the non-moving party must have pleaded facts demonstrating "a claim to relief that is plausible on its face." *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim for relief is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).

When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *U.S. ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

Typically, the court's review of a Rule 12(b)(6) motion is limited to the complaint and documents attached to the complaint and incorporated by reference. *See* Fed. R. Civ. P. 12(b)(6), 12(d); Fed. R. Civ. P. 10(c). The court also may take judicial notice of adjudicative facts and matters of public record and consider documents "integral to and explicitly relied on in the complaint" when their authenticity is not disputed. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)); *see also* Fed. R. Evid. 201(b). When the parties present and the court considers other matters beyond the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

## B. Rule 56

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party," then summary judgment is appropriate. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

When both parties file motions for summary judgment, "the role of the court is to 'rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 729 (D. Md. 1996) (quoting *Towne Mgmt. Corp. v. Hartford Acc. And Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)). In other words, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

"Rule 56(d) mandates that summary judgment be denied when the nonmovant 'has not had the opportunity to discover information that is essential to h[er] opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (citation omitted). "To obtain Rule 56(d) relief, the non-moving party must show how discovery 'could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Collington v. Maryland*, Civ. No. GJH-20-966, 2021 WL 3172275, at *7 (D. Md. July 26, 2021) (quoting *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015)). Generally, the non-moving party must make this showing "through the filing of a Rule 56(d) affidavit that outlines the need for discovery and what additional facts litigants hope to uncover through discovery to

properly defeat summary judgment." *Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015); *see also* Fed. R. Civ. P. 56(d). Even without such an affidavit, however, a district court may not grant summary judgment "when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (citation omitted). Therefore, "a Rule 56(d) affidavit may not be necessary[]" "where 'the nonmoving party's objections before the district court serve[] as the functional equivalent[.]'" *Dave & Buster's*, 616 F. App'x at 561 (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002)).

Defendants' motion, which seeks summary judgment under Rule 56 in the alternative to dismissal under Rule 12(b), provides Plaintiff sufficient notice that the Court may consider matters outside the pleadings and decide the motion under a Rule 56 standard. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Specifically, Defendants attach to their motion several video recordings containing footage from their BWCs, which collectively depict the entirety of Defendant Jeffry's investigation and Plaintiff's encounter with Defendants, including her arrest and transportation to the Towson precinct. In response, Plaintiff does not provide any Rule 56(d) affidavit specifying a need for discovery in order to oppose Defendant's request for summary judgment, and she does not dispute the authenticity or accuracy of the BWC footage supplied by Defendants. To the contrary, Plaintiff attaches the same video exhibits to her response, in addition to several other documents outside the pleadings, including her own affidavit addressing the facts of the case and court documents, in opposition to Defendants' motion and in support of her own cross-motion for summary judgment. In her brief, Plaintiff does request additional discovery, but, for reasons explained in Parts III.A.1, 2 *infra*, Plaintiff fails to show how the discovery she seeks "could possibly 'create a genuine issue of material fact sufficient for [her]

to survive summary judgment,' or otherwise affect the court's analysis[,]" in this case. *Poindexter*, 792 F.3d at 411 (quoting Fed. R. Civ. P. 56(d)).

The Court is not persuaded that Plaintiff has articulated a need for discovery to oppose summary judgment. Because notice was given, and because resolution of Defendants' motion requires the Court to look beyond the allegations in the Complaint to undisputed matters outside the pleadings, the Court shall treat Defendants' motion as one for summary judgment.

## III.   DISCUSSION

### A.  Counts I Through III

In Counts I through III of the Complaint, Plaintiff asserts claims for damages under 42 U.S.C. § 1983 against both Defendants for alleged violations of federal constitutional rights. "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 748 (D. Md. 2023) (citations omitted).

In their motion, Defendants assert qualified immunity as a defense to Plaintiff's federal constitutional claims. ECF No. 5-1 at 11–13. "In recognition of the complex task[s] performed by law enforcement officials," *Taylor v. Farmer*, 13 F.3d 117, 120 (4th Cir. 1993) (citation omitted), the doctrine of qualified immunity was devised to "shield[] officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Plaintiff opposes Defendants' assertion of qualified immunity. *See* ECF No. 14 at 21–24.

"Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson*, 555 U.S. at 237 (citation omitted). Therefore, the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Indeed, a "qualified immunity defense may be determined on a motion for summary judgment, even when asserted before discovery." *Poole v. Cnty.*, No. 3:15-CV-00309-FDW-DCK, 2016 WL 4267792, at *2 (W.D.N.C. Aug. 11, 2016) (citing *Harlow*, 457 U.S. at 818). Qualified immunity operates on a standard of "objective reasonableness," the "salient question" being "whether 'the state of the law' at the time of the events at issue gave the officer 'fair warning' that his alleged treatment of the plaintiff was unconstitutional." *Est. of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 420 (D. Md. 2014) (quoting *Jones v. Buchanan*, 325 F.3d 520, 531 (4th Cir. 2003)). The doctrine applies "unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232 (citing *Anderson*, 483 U.S. at 640). The qualified immunity inquiry begins "by determining 'the precise right' at issue." *Tarashuk v. Givens*, 53 F.4th 154, 162–63 (4th Cir. 2022) (citation omitted). Here, the Complaint states that Defendants "violated Plaintiff's clearly established rights at the time under the Second, Fourth, and Fourteenth Amendments[.]"[2]  Compl. ¶¶ 27, 33. However, for purposes of a qualified immunity analysis, the Court must avoid defining the right at such "a high level of generality." *City of Escondido, Cal. v.*

---

[2] In her opposition brief, Plaintiff makes passing references to the Fifth Amendment. ECF No. 14 at 12, 22. These references are in error. First, it is well-established that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Second, the Fifth Amendment is enforceable against federal officers but not officers acting under color of state law, like Defendants. *See Dutton v. Montgomery Cnty., Maryland*, Civ. No. DKC 2008-3504, 2009 WL 2496844, at *6 (D. Md. Aug. 11, 2009), *aff'd*, 368 F. App'x 362 (4th Cir. 2010) (citing *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 542 (1987)).

*Emmons*, 586 U.S. 38, 42 (2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). The Supreme Court and the Fourth Circuit have emphasized that "[c]ourts must take care to define the right at an 'appropriate level of specificity.'" *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). The Court construes the Complaint to assert the following rights: (1) the right to be free from arrest, detention, and imprisonment in the absence of probable cause; (2) the right against seizure of a lawfully owned firearm during an arrest; and (3) the right to be free from painful handcuffing and from placement in the back of a police vehicle for post-arrest transport, notwithstanding a preexisting back condition. Each of these rights is sufficiently specific to proceed with a qualified immunity inquiry.

Following the identification of the precise rights at issue, the Court must determine whether there was "a violation of a constitutional right" and whether "that right [was] 'clearly established' at the time of the alleged violation." *Campbell v. Florian*, 972 F.3d 385, 392 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (quoting *Pearson*, 555 U.S. at 232). Only one of these questions must be resolved in favor of Defendants for qualified immunity to apply. "If [an officer] did not violate any right, [they are] hardly in need of any immunity and the analysis ends right then and there." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (quoting *Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007)). And "even if a court finds or assumes that [an officer] violated an individual's constitutional rights, the offic[er] is entitled to immunity so long as [they] did not violate clearly established law." *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 429 (4th Cir. 2020). The Court has discretion in deciding which question should be addressed first. *See Pearson*, 555 U.S. at 236, 242 (stating that district court judges may address these two questions in "the order . . . that will best facilitate the fair and efficient disposition of [a] case").

"To determine if the right in question was clearly established," courts in the Fourth Circuit "first look to cases from the Supreme Court, [the Fourth Circuit] Court of Appeals, or the highest court of the state in which the action arose." *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017). "In the absence of 'directly on-point, binding authority,' courts may also consider whether 'the right was clearly established based on general constitutional principles or a consensus of persuasive authority.'" *Id.* (quoting *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 543 (4th Cir. 2017)).

### 1.  Counts I and II: Unreasonable Arrest

In Counts I and II of the Complaint, Plaintiff alleges that Defendants violated her rights under the Fourth Amendment by arresting and detaining her and seizing her firearm without probable cause. Compl. ¶¶ 23, 27, 33. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "[T]he arrest of a person is quintessentially a seizure." *Torres v. Madrid*, 592 U.S. 306, 312 (2021) (citation omitted). For an arrest to be "reasonable" for Fourth Amendment purposes, it must be supported by probable cause. *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001). Thus, binding precedent recognizes "a clearly established Fourth Amendment right to be arrested only upon probable cause . . . ." *Id.*

"[A] police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause to believe that the individual has committed, is committing, or is about to commit a crime." *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004) (citation omitted). "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)). "[S]ufficient probability, not certainty, is

the touchstone of reasonableness under the Fourth Amendment." *Hill v. California*, 401 U.S. 797, 804 (1971). Therefore, probable cause "is a flexible, common-sense standard" that does not require an officer's belief that a suspect committed a crime to "be correct or more likely true than false"; "[a] 'practical, nontechnical' probability that [a crime was committed] is all that is required." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (citation omitted). This standard does not require proof of guilt beyond a reasonable doubt or even by a preponderance of the evidence, *see United States v. Humphries*, 372 F.3d 653, 600 (4th Cir. 2004) (citations omitted), nor does it require "the same type of specific evidence of each element of the offense as would be needed to support a conviction[,]" *Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012) (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)). "Reasonable law enforcement officers are not required to . . . resolve every doubt about a suspect's guilt before probable cause is established." *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) (citation modified); *see also Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991) (quoting *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989)) ("[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful.").

Probable cause for an arrest "is determined by the 'totality of the circumstances,' . . . either known personally to the arresting officer, communicated to him by one or more of his fellow officers, or a combination of both." *United States v. Ashley*, 490 F. App'x 512, 513 (4th Cir. 2012) (citations omitted). The question is whether this information, "viewed from the standpoint of an objectively reasonable police officer, amount[s] to" probable cause to believe the arrestee committed a crime. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Whether an officer had probable cause for an arrest under an established set of facts "is ultimately a question of law." *Madison v. Harford Cnty.*, Civ. No. MJG-

15

12-1120, 2013 WL 4008859, at \*3 (D. Md. Aug. 2, 2013); *see also Middleton v. Koushall*, Civ. No. ELH-20-3536, 2024 WL 1967816, at \*34 (D. Md. May 3, 2024) (citing *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011)) ("Whether there was probable cause for an arrest is a question of law."); *Abdulkhalik v. City of San Diego*, No. 08CV1515-MMA (NLS), 2009 WL 4282004, at \*4 (S.D. Cal. Nov. 25, 2009) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985)) ("[W]hether a reasonable officer could have believed probable cause existed to justify [an] arrest is essentially a legal question."); *Sample v. Telles*, Civ. No. 03-1064 BB/KBM, 2004 WL 7337685, at \*2 (D.N.M. July 1, 2004) (citing *Hunter v. Bryant*, 502 U.S. 224, 227–28 (1991)) ("The question of whether a reasonable police officer could have believed he had probable cause is one of law."). The question should only proceed to the jury where there is a genuine dispute of material fact about what the officer knew before effecting the arrest. *See R.M.B. v. Bedford Cnty. (Va.) Sch. Bd.*, 169 F. Supp. 3d 647, 654 (W.D. Va. 2016) (citation omitted) ("Where, as here, there are no material disputes of fact, 'the court determines as a matter of law whether [the facts] amount to probable cause.'"); *Abdulkhalik*, 2009 WL 4282004, at \*4 (citing *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993)); *Sample*, 2004 WL 7337685, at \*2 (citing *Guffey v. Wyatt*, 18 F.3d 869, 871, 873 (10th Cir. 1994)).

Here, in connection with her arrest, Plaintiff was charged with first-degree and second-degree assault, in violation of Maryland Criminal Law §§ 3-202 and 3-203, respectively. *See* ECF Nos. 14-2 & 14-3. The former section, a felony charge, provides that "[a] person may not commit an assault with a firearm," Md. Code Ann., Crim. Law § 3-202(b)(2), (c), while the latter, a misdemeanor charge, provides that "a person may not commit an assault," *id.* § 3-203(a), (b). Under Maryland law, an assault "of the intent to frighten variety" is "defined as the doing of an act that places the victim in apprehension of immediate bodily harm with the intent to cause such

apprehension." *Harris v. State*, 728 A.2d 180, 184 (Md. 1999) (citation modified). Because Defendant Jeffry did not have an arrest warrant and was not present for the alleged assault, the arrest would have only been lawful under the Fourth Amendment if probable cause supported a belief that Plaintiff committed first-degree assault. *See Dickey-Bey*, 393 F.3d at 453 n.2 (warrantless arrest for a misdemeanor is lawful only if the misdemeanor is "committed in the officer's presence[]").

The entirety of Defendant Jeffry's investigation was captured clearly by her BWC, and the footage from both Defendants' BWCs is attached to both parties' motions as video exhibits. *See* ECF Nos. 5-2, 5-3, 5-4, 5-5. The Court finds that it may properly consider this footage in assessing Defendants' qualified immunity defense for multiple reasons. The Complaint itself acknowledges that Defendants' BWCs captured the entire investigation, Compl. ¶ 22, and Plaintiff neither contests the authenticity of the BWC video exhibits attached to Defendants' motions nor disputes the accuracy of the events depicted in them. In response to Defendants' motion, Plaintiff does not provide any Rule 56(d) affidavit specifying a need for discovery to contest Defendants' video evidence that her arrest was supported by probable cause. In her opposition brief, Plaintiff asserts that she is entitled to discovery of the BWC footage of Defendant Jeffry's full conversation with her supervisor regarding probable cause, as well as of Defendant Jeffry's travel from Walgreens to Agnew's residence, before her investigation, ECF No. 14 at 29, but such footage would be immaterial and far from "essential to [Plaintiff's] opposition." *Pisano*, 743 F.3d at 931 (citation omitted). Probable cause is determined through a standard of objective reasonableness based on the information known to the officer—not the officer's own subjective assessment of probable cause. *See Graham v. Gagnon*, 831 F.3d 176, 185 (4th Cir. 2016) (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)) ("Because probable cause is an objective test, we examine the

facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; we do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause."). The complete scope of relevant information known to Defendants before Plaintiff was arrested and her firearm was seized is captured in the BWC footage of Defendant Jeffry's investigation, which both parties have cited as video exhibits. Any conversation Defendant Jeffry had with her supervisor would play no role in the analysis and could not possibly create a genuine dispute as to whether probable cause supported Plaintiff's arrest. What, if any, views either Defendant expressed before the challenged seizures is immaterial to the question of whether the seizures were supported by probable cause.

Based on the totality of the circumstances, there is no genuine dispute that Defendants had probable cause to believe that Plaintiff had committed first-degree assault. Through her investigation of the incident, Defendant Jeffry learned that Plaintiff possessed a firearm and held it and threatened to use it against Agnew when he approached her vehicle. Although Agnew reported that Plaintiff held what appeared to be a taser in her left hand that she pointed in his direction, and that he did not see a gun, ECF No. 5-3 at 01:10–01:13, Plaintiff admitted to Defendant Jeffry that she at least tried to "ma[ke] sure" Agnew saw the firearm in her right hand, ECF No. 5-3 at 02:48–02:51. Plaintiff disputed portions of Agnew's account, stating that she does not own a taser and did not point anything at him, but her admission to taking up a firearm in her right hand as Agnew approached intending that he see it is adequate to support a reasonable belief that she used this weapon with the intent to place Agnew in apprehension of immediate bodily harm. *See* ECF No. 5-2 at 08:59–09:01; ECF No. 5-3 at 02:08–02:14; ECF No. 14-4 at 3; ECF No. 14-5 at 4. Agnew reported to Defendant Jeffry that when he approached Plaintiff's vehicle, she

18

threatened to "put some bullets in [him,]" and, thereafter, he backed away from her vehicle while putting his hands up. ECF No. 5-2 at 02:26–02:43.[3] This report was more than sufficient to support a reasonable belief that Agnew was aware of Plaintiff's threat to shoot him and that Plaintiff's conduct placed Agnew in fear of being shot. In summary, it had been reported to Defendant Jeffry that Plaintiff held a firearm with the intention that Agnew see it, had the apparent ability to cause Agnew physical harm through use of the weapon, made a threatening statement sufficient to place Agnew in apprehension of immediate harm, and intended to cause such apprehension. *See* ECF No. 5-2 at 02:26–02:36; ECF No. 5-3 at 01:10–01:13, 02:48–02:51. The facts Defendant Jeffry gathered about Plaintiff's conduct aligned with first-degree assault, *see Rogers*, 249 F.3d at 290, and supported a "'practical, nontechnical' probability" that Plaintiff had committed this crime, *Brown*, 460 U.S. at 742.

Although allegations in the Complaint and statements made on the BWC footage reflect some degree of hesitation or ambivalence in Defendant Jeffry about charging Plaintiff with first-degree assault in light of the competing accounts, *see* Compl. ¶ 20; ECF No. 5-3 at 05:44–06:03, 07:19–07:30, "probable cause is an objective standard," *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018), that does not turn on "the subjective beliefs of the arresting officers[,]" *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). "Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Rogers*, 249 F.3d at 290. And the facts known to the officer are "viewed from the standpoint of an objectively reasonable police officer." *Wesby*, 583 U.S. at 56–57. Even viewing the facts in the instant case in the light

---

[3] In her statement of probable cause, Defendant Jeffry stated, based on her observation of the scene, that if Plaintiff held her firearm toward the passenger-side floorboard as she claimed, "Agnew would not have . . . report[ed] seeing a weapon in [her] hand." ECF No. 14-4 at 3. But, considering Plaintiff's verbal threat to shoot Agnew, he did not need to see the weapon to be placed in fear of immediate bodily harm.

most favorable to Plaintiff, an objectively reasonable officer aware of the information known to Defendants could believe that Plaintiff committed first-degree assault by holding a firearm to place Agnew "in apprehension of immediate bodily harm with the intent to cause such apprehension." *Harris*, 728 A.2d at 184; *see also* Md. Code Ann., Crim. Law § 3-202(b)(2), (c). Defendants were not "required to . . . resolve every doubt about [Plaintiff's] guilt before" deciding that probable cause existed to make an arrest. *Brown*, 460 U.S. at 730 (citation omitted). Moreover, because probable cause is a "flexible" standard, Defendants were allowed to reassess any initial impressions they had about Plaintiff and Agnew's competing accounts, so long as the facts they obtained supported a reasonable belief that Plaintiff committed a felony. *Wadkins*, 214 F.3d at 541 (citation modified); *see also Dukore v. District of Columbia*, 799 F.3d 1137, 1143 (D.C. Cir. 2015) ("The essence of probable cause is making close judgment calls based on oftentimes conflicting information.").[4]

The facts known to Defendant Jeffry supported probable cause to arrest Plaintiff; therefore, the arrest was reasonable under the Fourth Amendment. It is also well established that "if police officers have probable cause to arrest, they may search suspects incident to that arrest to remove any weapons that the arrestee may use." *United States v. Peebles*, Crim. No. SAG-22-320, 2023 WL 6541250, at *2 (D. Md. Oct. 5, 2023) (citing *Arizona v. Gant*, 556 U.S. 332, 338–39 (2009)); *see also Brathwaite v. Georgiades*, Civ. No. ABA-23-277, 2024 WL 5107230, at *8 (D. Md. Dec.

---

[4] Plaintiff contends that probable cause for her arrest was lacking because she told Defendants she was acting in self-defense when Agnew approached her car in a threatening manner. *See* ECF No. 14 at 16–18, 24. But, by Agnew's account, he did not present any threat to Plaintiff. According to Agnew, his genitals were not exposed to Plaintiff when he answered the door, and when he approached Plaintiff's vehicle, he had his hands up in a non-threatening manner. ECF No. 5-2 at 01:30–02:32. "A police officer faced with conflicting facts . . . does not necessarily lack probable cause for arrest simply because one party insists that her version of the facts is correct—even if that party claims at the time that she acted in self-defense." *McCoy v. Hous. Auth. of New Orleans*, Civ. No. 15-398, 2016 WL 2992528, at *17 (E.D. La. May 24, 2016), *aff'd*, 714 F. App'x 322 (5th Cir. 2017).

12, 2024), *aff'd*, No. 24-2230, 2025 WL 2437834 (4th Cir. Aug. 25, 2025), *cert. denied*, No. 25-894, 2026 WL 795230 (2026) (granting defendants summary judgment on Fourth Amendment and Article 26 claims for seizure of firearm where defendants had probable cause to arrest plaintiff). Because Defendants did not violate Plaintiff's clearly established Fourth Amendment rights not to be arrested and not to have her weapon seized without probable cause, Defendants are entitled to qualified immunity from any Fourth Amendment claim brought under 42 U.S.C. § 1983 based on Plaintiff's arrest and the seizure of her gun.

### 2. Counts I and II: Excessive Use of Force

In addition to challenging the probable cause in support of her arrest in Counts I and II, Plaintiff alleges that Defendants used excessive force against her in connection with her arrest. Compl. ¶¶ 27, 33. The only apparent use of force by Defendants involved handcuffing her, which Plaintiff contends was tight to the point of causing pain, and placing her in the backseat of Defendant Jeffry's police vehicle, the combination of which Plaintiff alleges aggravated preexisting back injuries. *Id.* ¶¶ 16, 27, 33.

"[T]he Fourth Amendment prohibits police officers from using force that is 'excessive' or not 'reasonable' in the course of making an arrest." *Meyers v. Balt. Cnty.*, 713 F.3d 723, 732 (4th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Claims of excessive force in connection with an arrest are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard," *Graham*, 490 U.S. at 388, which "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake[,]" *Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016) (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)). "Whether an officer's actions . . . were objectively reasonable is 'a pure question of law'

21

for the court to determine." *Caraway v. City of Pineville*, 111 F.4th 369, 381 (4th Cir. 2024); *see also Armstrong v. Hutcheson*, 80 F.4th 508, 514 (4th Cir. 2023) ("[I]n Fourth Amendment cases, objective reasonableness is not a jury question—it is a question of law."). Factors the court should consider include (1) "the severity of the crime at issue"; (2) "the extent to which the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Armstrong*, 810 F.3d at 899 (quoting *Graham*, 490 U.S. at 396). "In considering the reasonableness of an officer's actions, [courts] must consider the facts at the moment that the challenged force was employed." *Smith*, 781 F.3d at 101 (citing *Henry*, 652 F.3d at 531). But the court must also view the use of force "in full context, with an eye toward the proportionality of the force in light of all the circumstances." *Armstrong,* 810 F.3d at 899 (quoting *Smith*, 781 F.3d at 101).

Here, Plaintiff claims she experienced severe pain during her arrest and that her "tight" handcuffing and transportation in the "cramped" backseat of Jeffry's police vehicle exacerbated a preexisting back condition for which she had recently had surgery. Compl. ¶¶ 16, 27, 33. It is well known that "[h]andcuffing [of an arrestee's] hands behind h[er] back . . . [is] a routine police procedure[,]" *Royster v. Nichols*, 698 F.3d 681, 691–92 (8th Cir. 2012) (quoting *Dunn v. Denk,* 79 F.3d 401, 403 (5th Cir. 1996)), "that 'inevitably involves some use of force[.]'" *Gilcher v. Smith*, No. 1:23-CV-00192-MR, 2024 WL 5112753, at *6 (W.D.N.C. Dec. 13, 2024) (quoting *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006)). "[A] standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified, as here, in effecting the underlying arrest." *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002); *see also* Part III.A.1 *supra* (finding that Plaintiff's arrest was justified by probable cause that she committed first-degree assault).

In an unpublished decision issued in June 2023, the Fourth Circuit determined that there is no "robust consensus" that such conduct is "a clearly established violation of the Fourth Amendment[.]" *Schoonover v. Clay Cnty. Sheriff's Dep't*, No. 20-1680, 2023 WL 4026091, at *6 (4th Cir. June 15, 2023) (quoting *Jackson v. Lubelan*, 657 F. App'x 497, 502 (6th Cir. 2016)).[5] In *Schoonover*, plaintiff-appellant Schoonover, whose left arm is amputated, brought a Fourth Amendment excessive force claim under 42 U.S.C. § 1983 against two deputy sheriffs. He alleged that the deputies "used excessive force when they handcuffed his right wrist to his right ankle during his arrest for several minor traffic violations." *Id.* at *1. The district court found that the deputies were protected by qualified immunity. *Id.* On appeal, Schoonover argued that the district court erred because his "right not to be handcuffed wrist-to-ankle was clearly established." *Id.* at *4. In support, he relied on Sixth and Eighth Circuit cases in which officers were made aware of plaintiffs' pre-existing injuries but nevertheless handcuffed them in ways likely to exacerbate those injuries. *Id.* at *4–5. Schoonover also cited out-of-circuit district court decisions suggesting that officers must consider known injuries when handcuffing a non-threatening individual. *Id.* at *5. The Fourth Circuit rejected these arguments and concluded that the district court cases did not establish a "robust consensus" that Schoonover's asserted right was clearly established. *Id.* at *5–6. To the contrary, the court noted that other circuits have reached the opposite conclusion by granting qualified immunity to officers who caused injury during handcuffing even when "aware of the [arrestee's] preexisting injury or complaints of pain or discomfort." *Id.* at *6.

---

[5] *But see Gilcher*, 2024 WL 5112753, at *6 (quoting *Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 819–20 (D. Md. 2022) (assessing Fourth Amendment excessive force claims and finding that "'[u]nduly tight handcuffing' . . . can constitute excessive force if the plaintiff is injured from the handcuffing, and the defendant [officer] ignored the plaintiff's complaints about the handcuffs"). This Court cannot rely upon a finite set of district court decisions alone in determining whether there is a "clear" or "robust" consensus among courts for purposes of a qualified immunity analysis. *See Thompson*, 878 F.3d at 98; *Schoonover*, 2023 WL 4026091, at *6.

23

Here, as noted *supra*, Plaintiff's encounter with Defendants is captured in BWC footage cited as video exhibits in both parties' motions. *See* ECF Nos. 5-2, 5-3, 5-4, 5-5. The Court finds that it may properly consider these exhibits because, collectively, they depict the entirety of Defendants' conduct during their encounter with Plaintiff, including her arrest, handcuffing, and transportation to the Towson precinct, as well as all relevant interactions preceding these events. In response, Plaintiff does not dispute the authenticity of the BWC footage or the accuracy of the events depicted therein. Nor does she provide any Rule 56(d) affidavit specifying a need for discovery to dispute the events depicted in the video exhibits. Plaintiff does, however, argue that the footage "does not capture [her] physical pain, emotional distress, or the full scope of the force inflicted during handcuffing and transportation." ECF No. 14 at 9. She argues that "additional discovery" is needed "to more fully develop the evidentiary record." *Id.* Further, Plaintiff asks "that the Court not rely solely on Defendants' selected BWC clips to determine the nature and degree of force used, or the extent of her injuries and pain [and] suffering." *Id.*

The Court is not persuaded that Plaintiff has articulated a need for discovery to oppose Defendants' qualified immunity defense to her excessive force claims. What force Defendant Jeffry used in placing handcuffs on Plaintiff, guiding her to the backseat of the police vehicle, and transporting her to the precinct is fully depicted in Defendants' video exhibits. Even if the BWC footage does not depict the physical pain and emotional distress Plaintiff experienced, the Court may proceed by "adopting . . . [P]laintiff's version of the[se] facts[,]" to the extent her version of events is not refuted or contradicted by the video evidence. *Scott v. Harris*, 550 U.S. 372, 378 (2007)). In other words, the Court will assume, as Plaintiff states in her Complaint and affidavit, that her handcuffs were tight enough to cause "great pain and agony to her wrists and back when

coupled with . . . having to bend and be seated inside [Defendant Jeffry's] cramped police car after recent back surgeries." Compl. ¶¶ 16, 68; *see also* ECF No. 14-1, ¶ 23.

Even assuming Plaintiffs' asserted facts about her pain and injuries to be true, she fails to establish that Defendants' use of force in connection with her arrest violated clearly established law. Considering the first *Graham* factor, the alleged crime of first-degree assault is a fairly serious offense involving criminal use of a weapon and, therefore, may reasonably call for greater physical restraint and use of force to effect an arrest than would be appropriate for a minor offense. *See Kopf v. Skyrm*, 993 F.2d 374, 379 (4th Cir. 1993) ("[M]ore force may be reasonably used in apprehending a violent criminal than a jaywalker."); *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) ("[M]ore force is appropriate for a more serious offense and less force is appropriate for a less serious one[.]"). As to the second and third *Graham* factors, viewed objectively, Plaintiff did not pose an immediate threat to the safety of any officers, did not threaten the officers or anyone else, did not resist arrest, and did not attempt to flee. *See* ECF Nos. 5-4 & 5-5. At all relevant times, Plaintiff promptly complied with the officers' instructions. Her conduct suggested that a high degree of force was not necessary to effect her arrest. And the video evidence confirms that a high degree of force was not used in connection with the arrest. At no point while being handcuffed did Plaintiff give any indication, whether verbally or non-verbally, that she was in pain or that the handcuffs were too tight. Defendant Jeffry then guided Plaintiff as she took a seat in the backseat of Defendant Jeffry's police vehicle. At that point, Plaintiff stated, "This is so uncomfortable," *id.* at 09:21–09:24, but gave no indication that she was in pain or that either the handcuffs or the backseat was what caused the degree of pain she now claims she experienced at the time. Based on these facts, it cannot be said that Defendant Jeffry's use of force in connection with the arrest was objectively unreasonable.

During the subsequent ten-minute ride to the precinct, Plaintiff expressed pain and discomfort in her back twice and referenced her pre-existing back condition on one of those occasions. After riding for approximately three and a half minutes, Plaintiff stated, "oh my god, and my back," although the rest of her statement is inaudible from the BWC footage. *Id.* at 14:02–14:06. Defendant Jeffry responded that she was trying to get Plaintiff to the precinct quickly, to which Plaintiff replied, "that's okay," and Defendant Jeffry apologized. *Id.* at 14:06–14:08. Approximately five minutes later, Plaintiff stated calmly, "I have rods in my back, these handcuffs is tearing [them] up." *Id.* at 19:28–19:33. Defendant Jeffry did not respond to this statement. They reached the precinct approximately two minutes later, at which point Plaintiff thanked Defendant Jeffry "for being kind to [her]," and Defendant Jeffry replied "of course." *Id.* at 22:13–22:17. After exiting the vehicle, the BWC footage shows Plaintiff walking unassisted into the precinct and sitting and removing her shoes, shoelaces, and belt without any apparent issue or expression of pain or discomfort. *Id.* at 22:25–22:57, 23:43–25:11, 25:35–25:44, 25:56–26:11, 26:56–27:16. As explained *supra*, at the time of these events, there was neither binding precedent in this Circuit nor a "robust consensus" among other circuits establishing that a police officer violates clearly established law by "injuring an individual during handcuffing, even when the officer was aware of the individual's preexisting injury or complaints of pain or discomfort." *Schoonover*, No. 20-1680, 2023 WL 4026091, at *6. Therefore, Defendants are entitled to qualified immunity and summary judgment on Plaintiff's Fourth Amendment excessive force claims.[6]

---

[6] It is not entirely clear, but, in addition to the Fourth Amendment, Plaintiff may be invoking her right against excessive force under the Due Process Clause of the Fourteenth Amendment. *See* Compl. ¶¶ 27, 33. The Fourteenth Amendment, in relevant part, prohibits any state deprivation "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV; *see also Ingraham v. Wright*, 430 U.S. 651, 672 (1977). The Due Process Clause "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 608–09 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). To prevail on such a claim, a plaintiff must generally show that "the use of force

### 3. Counts I and II: Second Amendment Violation

In Counts I and II of the Complaint, Plaintiff alleges that Defendants violated her rights under the Second Amendment by seizing her firearm in connection with her arrest. Compl. ¶ 23. The Second Amendment guarantees "the right of the people to [lawfully] keep and bear Arms." U.S. CONST. amend. II. "The right to 'bear arms' . . . includes a right to carry firearms in public for self-defense." *United States v. Jackson*, 152 F.4th 564, 568 (4th Cir. 2025) (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 32–33 (2022)). However, "the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

Plaintiff fails to cite any binding authority that clearly established her right not to have her firearm seized in connection with her arrest.[7] Courts have found that "seizure of one particular firearm d[oes] not [necessarily] interfere with [an individual's] Second Amendment interests[.]" *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571 (7th Cir. 2014); *see also Fairbanks v.*

---

was deliberate—*i.e.*, purposeful or knowing"—and "that the force used was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97; *see also Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016).

To the extent that Plaintiff's excessive force claims are based upon her handcuffing and placement in Defendant Jeffry's police vehicle, they are properly analyzed under the Fourth Amendment because the use of force was in connection with an arrest. *See Graham*, 490 U.S. at 395 ("All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]").

However, Plaintiff also alleges that Defendant Jeffry "violated [her rights] when she forced [Plaintiff] to be transported in the confines of a very small cabin area of her police vehicle, causing an exacerbation of Plaintiff's pre-existing back injuries resulting from trauma and recent surgeries." Compl. ¶ 68. To the extent Plaintiff intends for this allegation to support a Fourteenth Amendment claim of excessive force while in pretrial detention, the Court again finds that Defendants are entitled to qualified immunity. The video evidence does not depict any objectively unreasonable conduct by either Defendant. Moreover, Plaintiff identifies no authority clearly establishing an arrestee's right, based upon preexisting back injuries, not to be transported in the backseat of a police vehicle while handcuffed, and the Court is unaware of any such authority from the Fourth Circuit or the Supreme Court or any consensus on this issue among other circuits. Accordingly, Defendants are entitled to qualified immunity on any Fourteenth Amendment excessive force claim based on her transportation to the Towson precinct.

[7] Insofar as Plaintiff asserts a more specific right under the Second Amendment not to have her firearm seized when arrested without probable cause, that right was not violated. As explained in Part III.A.1 *supra*, Plaintiff's arrest was supported by probable cause.

27

*O'Hagan*, 255 F. Supp. 3d 239, 245 (D. Mass. 2017) (citation omitted) ("The Second Amendment is not implicated by the seizure of individual firearms."); *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 217 (S.D.N.Y. 2005) ("[T]he 'right to bear arms' is not a right to hold some particular gun."). The Supreme Court's holding in *Bruen* that law-abiding citizens have a right to carry firearms for self-defense, 597 U.S. at 9, did not disturb its holding in *Heller* that "the right secured by the Second Amendment is . . . not a right to keep and carry any weapon whatsoever[,]" 554 U.S. at 626. Consistent with that understanding, the Eighth Circuit "has held that even the *unlawful* retention of specific firearms [by law enforcement] does not violate the Second Amendment, because the seizure of one firearm does not prohibit the owner from retaining or acquiring other firearms." *Rodgers v. Knight*, 781 F.3d 932, 941–42 (8th Cir. 2015) (citing *Walters v. Wolf*, 660 F.3d 307, 317–18 (8th Cir. 2011)). Yet, as acknowledged by the Seventh Circuit, "[w]hether and to what extent the Second Amendment protects an individual's right to possess a particular gun . . . is an issue that is just beginning to receive judicial attention." *Sutterfield*, 751 F.3d at 571. This Court is unaware of any decision from the Fourth Circuit or the Supreme Court squarely addressing whether the Second Amendment protects an individual's right to possess a particular firearm and not to have it seized in connection with an arrest. Because Plaintiff cites no such authority, Defendants are entitled to qualified immunity from any § 1983 claim asserting that right.[8]

### 4. Count III: Bystander Liability

Count III of the Complaint asserts a claim against Defendant McDowell for bystander liability under 42 U.S.C. § 1983. Plaintiff alleges that Defendant McDowell violated her constitutional rights when he "ordered/commanded, endorsed, aided and abetted, co-Defendant

---

[8] To the extent that Plaintiff asserts that Defendants' seizure of her weapon in connection with her arrest violated her right to due process under the Fourteenth Amendment, *see* Compl. ¶¶ 27, 33, she fails to identify any binding precedent that clearly established such a right. Therefore, Defendants are entitled to qualified immunity from any due process claim based on the seizure of her firearm.

Jeffry to arrest Plaintiff without probable cause for [first- and second-degree] assault[,]" and when he failed to uphold his "affirmative duty to intervene and protect the constitutional rights of Plaintiff from infringement by co-Defendant Jeffry[.]" Compl. ¶¶ 36, 38, 41.

"The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002). "To succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer '(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act.'" *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 417 (4th Cir. 2014) (quoting *Randall*, 302 F.3d at 204).

As discussed *supra*, there is no genuine dispute that Defendant Jeffry did not violate any of Plaintiff's clearly established constitutional rights, and, therefore, she is entitled to qualified immunity from Plaintiff's § 1983 claims. In the absence of any underlying violation of clearly established law, Defendant McDowell is entitled to qualified immunity from Plaintiff's § 1983 bystander liability claim.

For the foregoing reasons, the Court concludes that Defendants are entitled to qualified immunity as to all of Plaintiff's federal claims. Therefore, as to Plaintiffs' § 1983 claims, Defendants' motion shall be granted and Plaintiff's motion shall be denied.

### B. Counts IV Through IX

In Counts IV through IX of the Complaint, Plaintiff brings various Maryland constitutional and common law claims against Defendants. Because all parties are residents of Maryland, the Court lacks original jurisdiction of Plaintiff's state-law claims. A district court may exercise supplemental jurisdiction of claims for which it lacks original jurisdiction if those claims "are so

related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim" when it has "dismissed all claims over which it has original jurisdiction." Because the Court finds that Defendants are entitled to qualified immunity and has therefore dismissed all federal claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over the remaining state-law claims and will remand those claims to state court. *See Owen-Williams v. Higgs*, Civ. No. DKC 18-0439, 2019 WL 448810, at *6 (D. Md. Feb. 5, 2019) (declining supplemental jurisdiction over state law claims after dismissing § 1983 claims); *Mills v. Hassan*, Civ. No. GLR-18-562, 2019 WL 4750338, at *9 (D. Md. Sept. 30, 2019) (same).

## IV.    CONCLUSION

For the foregoing reasons, the Court treats Defendants' motion to dismiss or, alternatively, for summary judgment as a motion for summary judgment; grants Defendants' motion as to Plaintiff's claims under 42 U.S.C. § 1983 based on the doctrine of qualified immunity; and denies Plaintiff's cross-motion for summary judgment as to these federal claims. The Court declines to exercise supplemental jurisdiction of Plaintiff's state-law claims and remands those claims to the Circuit Court of Maryland for Baltimore County. A separate Amended Order shall issue.

April 10, 2026
_____
Date

/S/
_____
Matthew J. Maddox
United States District Judge