**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JACQUELINE CONWAY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. MJM-25-1826** |
| **JASMINE JEFFRY, *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

On April 10, 2026, this Court entered a Memorandum Opinion and Amended Order granting in part and denying in part defendants Jasmine Jeffry and Bryan McDowell's ("Defendants") Motion to Dismiss or for Summary Judgment (ECF No. 5), entering summary judgment in favor of Defendants on plaintiff Jacqueline Conway's ("Plaintiff") claims under 42 U.S.C. § 1983 in Counts I through III of the Complaint. ECF Nos. 21 & 22. The Court also remanded Plaintiff's remaining state-law claims in Counts IV through IX of the Complaint to the Circuit Court of Maryland for Baltimore County. *Id.* Now pending before the Court is Plaintiff's Motion for Reconsideration Pursuant to Federal Rule of Civil Procedure 59(e). ECF No. 24. The motion is fully briefed, and no hearing is necessary to resolve it, *see* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the Court shall deny Plaintiff's motion.

## I. LEGAL STANDARD

A party may file a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). The court "has considerable discretion in deciding whether to modify or amend a judgment." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008). Modifying a judgment "is an extraordinary remedy that should be applied sparingly." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (citing *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997)). Although Rule 59(e) does not provide a standard under which a district court may grant a motion to alter or amend a judgment, *see* Fed. R. Civ. P. 59(e), the Fourth Circuit has recognized "three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice[,]" *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted).

Plaintiff asserts that the Court's prior judgment was based on clear errors of fact and law, resulting in manifest injustice. *See* ECF Nos. 24 & 24-1. "To successfully demonstrate that a Court's prior decision was a 'clear error or manifest injustice,' a party must show that the Court was 'dead wrong.'" *Hartnett v. Hardenbergh*, No. 3:23-CV-17-HEH, 2026 WL 510726, at *5 (E.D. Va. Feb. 24, 2026) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)); *see also TFWS*, 572 F.3d at 194 (citation modified) ("[T]o meet the high burden of showing that our [prior] holding . . . was clearly erroneous and would work a manifest injustice[,] [the] prior decision . . . must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."). In other words, "for a court to reconsider a decision due to manifest injustice, the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it." *In re D.C. Diamond Corp.*, No. 1:19-CV-463, 2020 WL 13605457, at *2 (E.D. Va. Mar. 16, 2020), *aff'd*, 816 F. App'x 873 (4th Cir. 2020) (quoting *South Carolina v. United States*, 232 F.

Supp. 3d 785, 799 (D.S.C. 2007)). "A court's decision is free from 'clear error' when it is 'factually supported and legally justified.'" *Nicholson v. Durant*, 162 F.4th 417, 422 (4th Cir. 2025) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081–82 (4th Cir. 1993)). "Mere disagreement does not support a Rule 59(e) motion." *Id.* (quoting *Hutchinson*, 994 F.2d at 1082).

## II. DISCUSSION

The Court incorporates by reference the factual background summarized in Part I of its prior Memorandum Opinion. ECF No. 21 at 2–6.

Upon review of the parties' arguments and the record in this case, the Court does not find any clear error of law or fact in its judgment or that modifying the judgment is necessary to prevent manifest injustice. Therefore, Plaintiff's Rule 59(e) motion is denied.

### A. Probable Cause

#### 1. Maryland Law Supports the Court's Finding of Probable Cause to Arrest Plaintiff for First-Degree Assault

Plaintiff argues that the Court committed clear legal and factual errors in concluding that Defendants had probable cause to arrest Plaintiff for first-degree assault. Although Plaintiff advances several arguments as to why the Court's probable cause finding was erroneous, her most primary contention is that the Court's finding is contrary to the definition of first-degree assault under Maryland law. ECF No. 24-1 at 5–6.

"Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" ECF No. 21 at 14 (quoting *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004)). "Probable cause [to arrest] is not a high bar[,]" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation modified); "[i]t requires only a probability or substantial chance of criminal activity, not an actual showing of such activity[,]" *id.* (citation modified). "Whether probable cause exists in a particular

situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." ECF No. 21 at 19 (quoting *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001)).

Under Maryland law, "[s]econd-degree assault 'encompasses three modalities: (1) intent to frighten, (2) attempted battery, and (3) battery.'" *Hammond v. State*, 289 A.3d 776, 791 (Md. App. Ct. 2023). "Second-degree assault is elevated to first-degree assault when there is an aggravating factor," *id.*, such as "commit[ting] an assault with a firearm," Md. Code Ann., Crim. Law § 3-202(b)(2), (c). As the Court noted in its prior Memorandum Opinion, "an assault 'of the intent to frighten variety' is 'defined as the doing of an act that places the victim in apprehension of immediate bodily harm with the intent to cause such apprehension.'" ECF No. 21 at 16 (quoting *Harris v. State*, 728 A.2d 180, 184 (Md. 1999)). For such an assault, "[a]ll that is required in terms of perception is an apparent present ability [by the assaulter to consummate a battery] from the viewpoint of the threatened victim." *Lamb v. State*, 613 A.2d 402, 412 (Md. Ct. Spec. App. 1992) (citation omitted); *see also Harrod v. State*, 499 A.2d 959, 964 (Md. Ct. Spec. App. 1985) ("[T]he victim must be aware of the impending contact."). "If . . . the would-be victim of the threat is unaware of the threatening conduct, there can be no assault of this variety." *Lamb*, 613 A.2d at 412 (citing *Harrod*, 499 A.2d at 964). While a would-be victim need not "be actually frightened or placed in fear of an imminent battery[,]" they must at the very least "be placed 'in reasonable apprehension of an impending battery.'" *Hammond*, 289 A.3d at 791–92 (quoting *Lamb*, 613 A.2d at 409). In Maryland, a battery is "inten[tional] . . . harmful or offensive contact with another without that person's consent[,]" and may occur through "direct or indirect contact." *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999) (citing Restatement (Second) of Torts § 13 & cmt. d

(1965)); *see also Hendrix v. Burns*, 43 A.3d 415, 428 (Md. Ct. Spec. App. 2012) ("[A] battery can be committed by the use of . . . a gun or other instrumentality.").

The Court did not err in finding that Defendants had probable cause to arrest Plaintiff for first-degree assault. Here, Defendant Jeffry learned from her investigation "that Plaintiff possessed a firearm and held it" while telling Agnew that she would "put some bullets in [him,]" which prompted Agnew to "back[] away from her vehicle while putting his hands up." ECF No. 21 at 18–19 (quoting ECF No. 5-2 at 02:26–02:43). "Although Agnew reported that Plaintiff held what appeared to be a taser in her left hand that she pointed in his direction, and that he did not see a gun, . . . Plaintiff admitted to Defendant Jeffry that she at least tried to 'ma[ke] sure' Agnew saw the firearm in her right hand[.]" *Id.* at 18 (first citing ECF No. 5-3 at 01:10–01:13, and then quoting *id.* at 02:48–02:51). Based on these accounts, the Court again concludes that Defendant Jeffry collected sufficient information to establish probable cause that Plaintiff committed an act placing Agnew in apprehension of immediate bodily harm and that she intended to cause such apprehension. Because Plaintiff admitted to committing this act with a firearm, Defendant Jeffry had probable cause to believe Plaintiff committed first-degree assault.

In her motion for reconsideration, Plaintiff argues that the Court erred because "it is black-letter Maryland law that first-degree assault of the intent-to-frighten variety by use of a firearm requires, as an indispensable element, that the alleged victim actually perceive the firearm." ECF No. 24-1 at 5 (citing *Lamb*, 613 A.2d at 413). The Court finds that Plaintiff misreads the applicable Maryland caselaw. The cases to which Plaintiff cites do not state that a would-be victim must accurately perceive the instrumentality with which an assailant committed assault; rather, they state that the victim must be placed "in reasonable apprehension of an imminent battery." *Lamb*, 613 A.2d at 413; *see also Harrod*, 499 A.2d at 964–65; *Perry v. State*, 2017 WL 2709801, at *5

(Md. Ct. Spec. App. June 23, 2017). Defendant Jeffry's investigation made clear that Agnew was aware that Plaintiff intended to make "harmful or offensive contact with [him] without [his] consent[]" through "indirect contact." *Nelson*, 735 A.2d at 1099 (citation omitted). His apprehension was evident from his backing away from Plaintiff with his hands raised after seeing an object in her hand and hearing her make a threat to shoot him. Put plainly, a reasonable officer in Defendant Jeffry's position could gather that Agnew was aware of an impending battery, even if he perceived a taser in Plaintiff's hand instead of a firearm. Plaintiff does not cite any caselaw suggesting that a mistaken belief about the instrumentality of an assault negates awareness of an impending battery, nor has the Court identified any.

The cases to which Plaintiff cites do not compel the conclusion Plaintiff advances. For instance, in *Perry v. State*,[1] the Maryland Court of Special Appeals (now, the Appellate Court of Maryland) considered whether the appellant could commit first-degree assault by pointing a gun directly at an infant. 2017 WL 2709801, at *1. The court explained that "[i]n order for an infant to be aware of [an impending battery]," where "the only threatened battery came from the threatened use of a firearm[,] . . . the infant would have to be aware of what a firearm is, and what it can do." *Id.* at *5. Adapting a hypothetical from *Lamb*, the court found that "[i]f the would-be victim perceives the threatening conduct but [does not know, for instance, what a firearm is, or what it can do], there is no apprehension of an imminent battery and, therefore, no assault of the threatening variety." *Id. Perry* was not about an adult who mistakenly perceived one weapon as another; it was about an eleven-month-old infant who, while able to perceive visually that a firearm

[1] In her memorandum supporting her motion for reconsideration, Plaintiff appears to misquote *Lamb*. ECF No. 24-1 at 5 ("[I]f a would-be victim perceives the threatening conduct but [does not know] what a firearm is or what it can do, there is no apprehension of an imminent battery and, therefore, no assault of the threatening variety."). The quoted material comes from *Perry*. *See Perry*, 2017 WL 2709801, at *5.

was pointed in her direction, lacked the ability to identify the firearm as a tool capable of causing bodily harm. The key in *Perry* was not whether the infant could recognize the firearm, but whether the infant could recognize the appellant's conduct as threatening immediate harm at all. Unlike the infant in *Perry*, Agnew could understand Plaintiff's verbal threat of immediate bodily harm and could associate the object he perceived in Plaintiff's hand with bodily harm. He apparently knew what a taser was and that it could physically harm him. *Id.* Although, based on Plaintiff's admission that she held an actual firearm and not a taser, Agnew misperceived the type of weapon involved, he nevertheless experienced the requisite apprehension that the infant in *Perry* could not.

Next, in *Harrod v. State*, the Maryland Court of Special Appeals considered whether the appellant committed assault of the intent-to-frighten variety when he "thr[ew] [a] hammer over top of [a child's] port-a-crib" even though "there was no evidence that [the child] was . . . even aware that a hammer was thrown." 499 A.2d at 960–61. Because "[t]here [was] no evidence in the record . . . that [the child] was in fact aware of the occurrences in his home," the court held that "there was insufficient evidence to find appellant guilty of the putting victim in fear-type assault." *Id.* at 964. Again, *Harrod* makes clear that the relevant inquiry was not whether the child accurately identified the instrumentality used in the assault, but whether the child was aware of any impending battery at all. This case is distinguishable because Agnew was unquestionably aware of Plaintiff's threatening conduct and exhibited apprehension of an impending battery when he backed away from her vehicle with his hands raised.

Plaintiff's argument is further undermined by Maryland's statutory scheme governing assault. Section 3-203 of Maryland's Criminal Law Article prohibits the commission of an assault. Md. Code Ann., Crim. Law § 3-203(a), (b). Section 3-202 separately identifies the use of a firearm in the commission of an assault as an aggravating factor. Md. Code Ann., Crim. Law § 3-202(b)(2),

(c). The firearm aggravator thus concerns the weapon actually used by the assaulter, rather than the victim's perception of the weapon. This reading of the statutory provisions is supported by Maryland's Criminal Pattern Jury Instructions, which provide, in relevant part, the following instructions for the intent-to-frighten theory of second-degree assault:

> Assault is intentionally frightening another person with the threat of immediate offensive physical contact [or] physical harm. In order to convict the defendant of assault, the State must prove:
>
> (1) that the defendant committed an act with the intent to place [the victim] in fear of immediate offensive physical contact [or] physical harm;
>
> (2) that the defendant had the apparent ability, at that time, to bring about offensive physical contact [or] physical harm; and
>
> (3) that [the victim] reasonably feared immediate offensive physical contact [or] physical harm[.]

Md. State Bar Ass'n, *Maryland Criminal Pattern Jury Instructions* § 4:01 (3d ed. 2025) (citation modified). The jury instruction for the use-of-firearm theory of aggravation to first-degree assault is provided separately as follows:

> In order to convict the defendant of first degree assault, the State must prove all of the elements of second degree assault and also must prove that . . . the defendant used a firearm to commit assault[.]

*Id.* § 4:01.1A (citation modified). Here, a reasonable officer in Defendants' position had probable cause to believe that the underlying assault was sufficiently established and that Plaintiff used the firearm in committing the assault. Accordingly, the Court's determination that Defendants had probable cause to arrest Plaintiff for first-degree assault was not "dead wrong." *Hartnett*, 2026 WL 510726, at *5 (citation omitted).

Because the Court did not err in finding Plaintiff's arrest to be supported by probable cause, it likewise did not err in any of its other findings that depended on that determination.

**2. Plaintiff's Remaining Probable Cause Arguments Are Unpersuasive**

Plaintiff also argues that the Court should grant her motion because the Court erred when it: (1) resolved factual disputes in Defendants' favor on the probable cause inquiry, ECF No. 24-1 at 7–10; (2) failed to grapple with the fact that, on the same day Plaintiff was arrested, the Baltimore County Court Commissioner reviewed the charges and expressly found no probable cause for Plaintiff's arrest, and the State's Attorney's Office independently concluded Plaintiff's arrest was premature, *id.* at 10–11; (3) failed to consider Defendant Jeffry's hesitation or ambivalence about whether probable cause supported Plaintiff's arrest, *id.* at 12; (4) denied Plaintiff's discovery request regarding body-worn camera ("BWC") footage in which Defendant Jeffry spoke with her immediate supervisor about whether probable cause existed to arrest Plaintiff, *id.* at 12–13, 17–19; and (5) misrelied on *McCoy v. Housing Authority of New Orleans*, *id.* at 14–17. The Court addresses in turn each of these arguments.

First, "[w]hen making a probable cause determination in th[e] context [of a motion for summary judgment], the court must '[v]iew[] the record and draw[] all reasonable inferences in the light most favorable to [the non-moving party], while simultaneously viewing the facts from the perspective of a reasonable officer.'" *Bost v. Bradds*, Civ. No. SAG-12-2544, 2013 WL 5308275, at *3 (D. Md. Sept. 18, 2013) (fourth, fifth, sixth, and seventh alterations in *Bost*) (quoting *Royster v. Nichols*, 698 F.3d 681, 688 (8th Cir. 2012)). In granting summary judgment in favor of Defendants here, the Court's probable cause determination was consistent with this standard.

Second, the Court was not required to give substantive weight to the probable cause determinations made by the Baltimore County Court Commissioner and the State's Attorney's Office after Plaintiff's arrest. *See Johnson v. Prince George's Cnty.*, Civ. No. DKC 10-0582, 2011

WL 806448, at *4 (D. Md. Mar. 1, 2011) ("There is no authority supporting [d]efendants' notion that the [Maryland state district court] commissioner's determination is entitled to some weight in a case such as this one."); *United States v. Fontanez*, Crim. No. 20-00689 (SRC), 2021 WL 5105783, at *7 n.8 (D.N.J. Nov. 3, 2021) (citing *Wesby*, 583 U.S. at 55 n.2) ("[T]he Court is not bound to the probable cause determinations made by prosecutors. Rather, the Court must evaluate probable cause on its own."). Nor do the Commissioner's and State's Attorney's Office's contrary legal conclusions create a genuine dispute of material fact. The only relevant question, for purposes of determining probable cause in this case, is whether the facts known to Defendants at the time of Plaintiff's arrest established probable cause when viewed from the perspective of an objectively reasonable officer. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted); *Rogers*, 249 F.3d at 290. This is a question of law, as noted in the prior Memorandum Opinion. *See* ECF No. 21 at 15–16 (collecting cases); *Middleton v. Koushall*, Civ. No. ELH-20-3536, 2024 WL 1967816, at *34 (D. Md. May 3, 2024) (citing *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011)). "The question should only proceed to the jury where there is a genuine dispute of material fact about what the officer knew before effecting the arrest." ECF No. 21 at 16 (citations omitted). Any legal conclusions reached by the Commissioner or the State's Attorney's Office do not give rise to any genuine factual dispute about what Defendants knew when Plaintiff was arrested. There is no genuine dispute as to the facts known to Defendants at the time of Plaintiff's arrest; the entire investigation is captured in BWC footage presented to the Court. As established *supra*, the Court did not err in determining that those facts established probable cause.

Third, because "probable cause is an objective standard," ECF No. 21 at 19 (quoting *Wesby*, 583 U.S. at 54 n.2), Defendant Jeffry's "contemporaneous doubt" has no bearing whether an objectively reasonable officer in her position would have found probable cause to arrest Plaintiff

for first-degree assault. Plaintiff's "[m]ere disagreement" with this aspect of the Court's determination does not warrant reconsideration under Rule 59(e). *Nicholson*, 162 F.4th at 422 (citation omitted).

Fourth, for the same reason explained above, Plaintiff's request for discovery of the BWC footage of Defendant Jeffry's full conversation with her supervisor does not preclude summary judgment. "Probable cause is determined through a standard of objective reasonableness based on the information known to the officer—not the officer's own subjective assessment of probable cause." ECF No. 21 at 17 (citing *Graham v. Gagnon*, 831 F.3d 176, 185 (4th Cir. 2016)). Accordingly, the requested "footage [is] immaterial" to the Court's probable cause determination "and far from 'essential to [Plaintiff's] opposition.'" *Id.* (quoting *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014)). Plaintiff's disagreement with the Court's conclusion likewise does not provide cause for reconsideration under Rule 59(e). *Nicholson*, 162 F.4th at 422 (citation omitted).

Fifth, the Court properly cited *McCoy v. Housing Authority of New Orleans*, Civ. No. 15-398, 2016 WL 2992528 (E.D. La. May 24, 2016), *aff'd*, 714 F. App'x 322 (5th Cir. 2017), for the well-established proposition that an officer confronted with conflicting facts and an assertion of self-defense is not precluded from finding probable cause to make an arrest. *See, e.g.*, *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 659 (7th Cir. 2024) ("[T]he existence and validity of an affirmative defense does not necessarily negate probable cause to arrest.") (citation omitted); *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) ("[A]rresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed.") (citation omitted); *Loftin v. City of Prentiss*, 539 F. Supp. 3d 617, 626 (S.D. Miss. 2021), *aff'd*, 33 F.4th 774 (5th Cir. 2022) ("[A] mere assertion of an

affirmative defense does not negate probable cause.") (citation omitted); *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 836 n.7 (S.D. Tex. 2011) (quoting *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004)) ("A police officer may not ignore *conclusively established* evidence of the existence of an affirmative defense, but the officer has no duty to investigate the validity of any defense.") (emphasis added). Plaintiff's defense was not "conclusively established" by the facts known to Defendants at the time of arrest. *Hodgkins*, 355 F.3d at 1061. For example, Plaintiff and Agnew provided conflicting accounts as to whether Agnew had behaved in a threatening manner toward Plaintiff. Because Defendant Jeffry's investigation revealed conflicting accounts of the events relevant to the merits of any self-defense defense Plaintiff might assert, Defendants were not precluded from finding probable cause to arrest her. Because probable cause is an objective standard, Defendant Jeffry's subjective assessment of the "reasonableness of Plaintiff's fear[]" cannot negate Defendants' probable cause to arrest Plaintiff. ECF No. 24-1 at 16.

Plaintiff separately argues that "[t]he evidence negating probable cause was conclusively established . . . [by] Agnew's repeated insistence that he never saw a firearm and was never placed in apprehension by one." ECF No. 24-1 at 17. But, as discussed in Part II.A.1 *supra*, all that was required to support an arrest for the first-degree assault was a reasonable probability that Plaintiff placed Agnew in reasonable apprehension of an impending battery, that Plaintiff used a firearm in doing so, and that it appeared to Agnew that Plaintiff had the ability to cause him offensive physical contact or harm. *See Harris*, 728 A.2d at 184; *Hammond*, 289 A.3d at 791–92; *Lamb*, 613 A.2d at 412; Md. State Bar Ass'n, *Maryland Criminal Pattern Jury Instructions* §§ 4:01, 4:01.1A. It was not required that Agnew specifically perceive the firearm instead of a taser, as long as it was apparent to him that Plaintiff had the then-present ability to consummate a battery, *see Lamb*, 613

A.2d at 412, which both his and Plaintiff's statements to Defendant Jeffry establish was the case. Agnew's mistaken perception of the weapon used by Plaintiff does not negate the probable cause supporting Plaintiff's arrest.

**B. Excessive Force**

Plaintiff argues that the Court erred in its excessive force analysis because it relied on an unpublished Fourth Circuit opinion in determining that, at the time of Plaintiff's arrest, "there was neither binding precedent in this Circuit nor a 'robust consensus' among other circuits establishing that a police officer violates clearly established law by 'injuring an individual during handcuffing, even when the officer was aware of the individual's preexisting injury or complaints of pain or discomfort.'"[2, 3] ECF No. 21 at 26 (quoting *Schoonover v. Clay Cnty. Sheriff's Dep't*, No. 20-1680, 2023 WL 4026091, at *6 (4th Cir. June 15, 2023)); *see also* ECF No. 24-1 at 19. Plaintiff cites *Mullenix v. Luna*, 577 U.S. 7 (2015), and *Thompson v. Virginia*, 878 F.3d 89 (4th Cir. 2017), to support her proposition that an unpublished Fourth Circuit opinion "cannot . . . negate a 'robust consensus' of authority for purposes of the clearly-established-law inquiry." ECF No. 26 at 10; *see also* ECF No. 24-1 at 19. However, those cases simply establish that, when determining whether a right was clearly established, if no case is directly on point, courts must consider whether

[2] Plaintiff also argues that the Court's excessive-force analysis was legally erroneous because the Court treated Plaintiff's pain in an internally contradictory manner. ECF No. 24-1 at 20. The Court made clear in its prior Memorandum Opinion that it would "'adopt[] . . . [P]laintiff's version of the[] facts[,]' to the extent her version of events is not refuted or contradicted by the video evidence." ECF No. 21 at 24 (second and fourth alterations in ECF No. 21) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). The Court's acknowledgment that Plaintiff was in pain, coupled with its observation that she did not outwardly or verbally indicate that she was experiencing pain while being handcuffed or after exiting Defendant Jeffry's vehicle at the Towson precinct, is not internally contradictory. ECF No. 21 at 25–26. Rather, those findings are consistent with the Court's stated approach to evaluating Plaintiff's version of the events. Plaintiff's argument is unpersuasive.

[3] Plaintiff further contends that the Court's reliance on *Schoonover* is inappropriate because of the procedural and factual distinctions between that case and the instant matter. *See* ECF No. 24-1 at 21–26. The Court finds those distinctions immaterial to its reliance on *Schoonover* in analyzing Plaintiff's excessive-force claim.

"existing precedent" or a "consensus of persuasive authority" has clearly established the right. *See Mullenix*, 577 U.S. at 11–12; *Thompson*, 878 F.3d at 98. The *Schoonover* court did precisely that: it considered the relevant persuasive authorities[4] and concluded that there was no robust consensus establishing a right to have officers consider known injuries when deciding whether to handcuff a non-threatening individual.[5] *See Schoonover*, 2023 WL 4026091, at *6. In reaching that conclusion, it observed that the relevant persuasive authorities actually indicated "that police officers *are* entitled to qualified immunity after injuring an individual during handcuffing, even when the officer was aware of the individual's preexisting injury or complaints of pain or discomfort." *Id. Schoonover*'s status as "an unpublished Fourth Circuit[] opinion" and therefore "not binding[,]" *United States v. McGrann*, 927 F. Supp. 2d 279, 282 (E.D. Va. 2013), did not preclude this Court from relying upon its persuasive reasoning as a "useful analytical tool[,]" *Bank*

---

[4] As the Fourth Circuit recognized in *Schoonover*, district court decisions are not usually considered as persuasive authorities for purposes of demonstrating that a right is clearly established because they lack precedential value. 2023 WL 4026091, at *5 (citing *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017)); *see also Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("Many Courts of Appeals . . . decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity."); *Booker*, 855 F.3d at 545 ("Given that published district court opinions, like unpublished opinions from our Court, have no precedential value, it follows that we should not consider them [as persuasive authorities in a qualified immunity analysis]."). Therefore, the Court did not err in holding that it could not "rely upon a finite set of district court decisions alone in determining whether there is a 'clear' or 'robust' consensus among courts for purposes of a qualified immunity analysis." ECF No. 21 at 23 (citations omitted).

[5] Plaintiff highlights the fact that the Fourth Circuit in *Schoonover* was analyzing a much narrower right—the right not to be handcuffed wrist-to-ankle—to argue that the Court's reliance on the unreported opinion was a clear legal error. ECF No. 24-1 at 22; ECF No. 26 at 10. In doing so, Plaintiff overlooks the portion of *Schoonover* on which the Court actually relied. Specifically, the Court relied on *Schoonover's* discussion of the right Schoonover himself asserted—the right to have known injuries considered by police officers during handcuffing. *See Schoonover*, 2023 WL 4026091, at *4. There, the Fourth Circuit acknowledged that "other circuits have reached the conclusion *opposite* Schoonover's position: that police officers *are* entitled to qualified immunity after injuring an individual during handcuffing, even when the officer was aware of the individual's preexisting injury or complaints of pain or discomfort." *Id.* at *6 (emphasis added). Given the similarity—if not identicalness—between the right asserted in *Schoonover* and the right Plaintiff asserts in the instant matter, this Court found it appropriate to consider the *Schoonover* court's discussion and analysis of those circuit court decisions in determining whether Plaintiff's right was "clearly established."

*of Southside Va. v. Host & Cook, LLC*, 239 F.R.D. 441, 450 (E.D. Va. 2007). This Court properly treated *Schoonover* as a persuasive authority and appropriately considered its assessment of the relevant legal landscape, together with the other persuasive authorities, in reaching its excessive-force determination.

**C. The Second Amendment**

Plaintiff argues that the Court made a legal error in its evaluation of her asserted right under the Second Amendment because it did not conduct a constitutional merits analysis under *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). ECF No. 24-1 at 27–28 ("[T]he Court bypassed the threshold constitutional question entirely and failed to apply the framework mandated by [*Bruen*]."). But Plaintiff's desired approach is not required in a qualified immunity inquiry. As explained in the Court's prior Memorandum Opinion,

> [f]ollowing the identification of the precise rights at issue, the Court must determine whether there was "a violation of a constitutional right" and whether "that right [was] 'clearly established' at the time of the alleged violation." . . . Only one of these questions must be resolved in favor of Defendants for qualified immunity to apply. . . . The Court has discretion in deciding which question should be addressed first.

ECF No. 21 at 13 (first quoting *Campbell v. Florian*, 972 F.3d 385, 392 (4th Cir. 2020), *as amended* (Aug. 28, 2020), and then citing *Pearson v. Callahan*, 555 U.S. 223, 236, 242). Accordingly, the Court did not err by ending its qualified immunity inquiry after concluding that Plaintiff's asserted right under the Second Amendment was not clearly established.

**D. Bystander Liability**

Plaintiff argues that the Court must reconsider its dismissal of her bystander liability claim against Defendant McDowell because that dismissal was predicated on findings that Plaintiff contends were erroneous. ECF No. 24-1 at 29. For the reasons explained in Parts II.A–C *supra*, however, the Court did not err in dismissing Plaintiff's 42 U.S.C. § 1983 claims against Defendant

Jeffry on qualified immunity grounds based on the lack of evidence that she violated a clearly established constitutional right. *See* ECF No. 21 at 14–28.

Plaintiff also argues that "the record independently supports [Defendant] McDowell's liability[]" and, thus, her bystander liability claim is "independently viable" notwithstanding Defendant Jeffry's liability. ECF No. 26 at 13; *see also* ECF No. 24-1 at 29. Plaintiff's "independent viability" argument fails, however, because bystander liability under § 1983 requires the officer's knowledge that another officer was violating an individual's constitutional rights. *See Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 417 (4th Cir. 2014) (citation omitted). Without any violation of a clearly established constitutional right by Defendant Jeffry, the Court finds no basis to reconsider its finding that Defendant McDowell did not violate any clearly established constitutional right as a bystander and, therefore, is entitled to qualified immunity.

## III. ORDER

For the reasons stated above, it is this 3rd day of September, 2026, by the United States District Court for the District of Maryland, hereby ORDERED that Plaintiff's Motion for Reconsideration Pursuant to Federal Rule of Civil Procedure 59(e) (ECF No. 24) is DENIED.

DATE: 9/3/26

/S/
Matthew J. Maddox
United States District Judge